# GORDON MANNWEILER ET AL. *v.* CHARLES E. LAFLAMME ET AL.
## (AC 20166)

Lavery, C. J., and Schaller and Hennessy, Js.

Argued February 22—officially released August 14, 2001

*Vincent T. McManus, Jr.*, for the appellants (defendants).

*Edward G. Fitzpatrick*, the appellees (plaintiffs).

*Opinion*

LAVERY, C. J. The defendants, Charles E. LaFlamme, Robert S. LaFlamme and David Apicella, appeal from the judgment in favor of the plaintiffs, Gordon B. Mannweiler, Arminda P. Murtha and William Boies, after a remand to the trial court to consider the defendants' special defense relating to the Marketable Title Act (act), General Statutes § 47-33b et seq.[1] The trial court found that the act did not apply and rendered judgment in favor of the plaintiffs.[2] We affirm the judgment of the trial court.

In *Mannweiler* v. *LaFlamme*, 46 Conn. App. 525, 526–34, 700 A.2d 57, cert. denied, 243 Conn. 934, 702 A.2d 641 (1997) (*Mannweiler I*), this court summarized the facts as follows. "In 1927, the J. H. Whittemore Company (Whittemore) recorded a subdivision map of a tract of land known as the Hop Brook Development (Hop Brook) in the Naugatuck land records. Hop Brook consisted of six sections that were divided into fifty-two lots that were delineated on the subdivision map. . . . All the parties to this action are owners of property in the development and derive their title from Whittemore, who was the common grantor. In May, 1991, the defendants received approval from the Naugatuck planning and zoning commission to resubdivide their property

---

[1] General Statutes § 47-33b provides in relevant part: "(a) 'Marketable record title' means a title of record which operates to extinguish such interests and claims, existing prior to the effective date of the root of title . . . ."

[2] On appeal, the defendants also raise additional issues pursuant to the act as well as a claim that the trial court improperly failed to find that the action of the plaintiffs was barred by the provisions of the applicable statute of limitations. We will not consider claims outside of the remand that pertain to the plaintiffs' special defense of the act.

and to construct two houses, in addition to the house that presently exists, on their lot.

"The plaintiffs instituted this action seeking injunctive and declaratory relief to prevent the defendants from constructing the two additional dwellings on their resubdivided parcel. The plaintiffs claim that Whittemore had created, by restrictive covenant, a uniform plan of development, or common scheme. The plaintiffs contend that this common scheme limits any development within Hop Brook to one residential dwelling per lot, as it is shown on the map to which all subsequent conveyances were subject.

\* \* \*

"The defendants took title to lots one, two, five and a portion of lot three, section E, of Hop Brook in June, 1989. The defendants accepted title subject to the following language: 'Possible conditions and restriction as set forth in two Warranty Deeds from J. H. Whittemore Company to Louis A. Dibble dated September 30, 1927 and July 15, 1930 recorded respectively in Vol. 78 Pages 41 and 642 of the deed from J. H. Whittemore Company to Louis A. Dibble dated September 26, Land Records, as supplemented by a Warranty Deed between those parties dated September 26, 1946 recorded December 7, 1946 in Vol. 97, Page 493 of the Naugatuck Land Records.' The defendants have erected one single-family dwelling on lot one, section E, of the subdivision.[3]

---

[3] In addition, in September, 1946, Whittemore conveyed to Dibble, the defendants' predecessor in title, the remaining land of section E not previously conveyed to Dibble. This land consisted of the remaining portions of lots one, five and three, as well as all of lot four. The deed conveying this property contained the following language: "In accordance with and to the extent that power to do so has heretofore been reserved by the Grantor, all covenants and restrictions applicable to lands within said Section E heretofore purchased by the Grantee from the Grantor are hereby revoked. In place thereof, and as applicable to all premises located within said Section E, whether heretofore or hereunder acquired, the said Grantee, his heirs and assigns, by the acceptance of this deed, assents and agrees that the premises within said Section E heretofore acquired by the Grantee shall be

"The plaintiffs claim that the construction of additional dwellings on lot one of section E is in violation of the mutual restrictive covenants as set forth in deeds to their lots, and those of their predecessors in title. The plaintiffs sought a temporary injunction to prevent the construction of the additional dwellings. The temporary injunction was granted by the trial court. The trial court, however, subsequently denied the plaintiffs' request for a permanent injunction."

In *Mannweiler I*, this court concluded that the initial deeds conveying Hop Brook properties specifically restricted the number of houses that could be built on each lot. This court also determined that the substantial

---

subject to the following covenants and restrictions: 1. All said premises shall be occupied and used by the Grantee, his heirs and assigns, for private residential purposes only and not otherwise, and there shall at no time be erected or maintained thereon anything except private residences, each for the use of one family only, which private residences shall each cost, exclusive of land, not less than $15,000.00, together with the necessary outbuildings thereto, and except such outbuildings as may be desired by the Grantee, his heirs and assigns, for use in connection with the occupancy of a private residence located within said Section. No private residence shall be erected or maintained on a lot having a street frontage of less than 100 feet or a total area of less than 15,000 square feet. 2. Said premises may be re-subdivided into building lots of dimensions other than those shown on said Map, provided, however, that no lot shall have a street frontage of less than 100 feet nor a total area of less than 15,000 square feet. On any such lot, or on the original lots if not re-subdivided, no house or outbuildings, including garage, stable, or any other structure, or any part or portion thereof, including porches, steps, porte cochere, bay windows, and any and all projections therefrom, shall be at any time erected or placed nearer to the front or sidewalk lines of any such lot than forty feet, nor nearer to the side line of any such lot than twenty feet or, where such lot sides upon a street, nearer than forty feet to such side or sidewalk line. 3. Each and all the foregoing covenants and restrictions are for the mutual benefit of all persons who have derived or who shall derive title, directly or indirectly, from the Grantor to any lot or lots shown on the Map herein before referred to, and shall run with the land in favor of all lots shown on said Map, and any breach or threatened breach of any one or more or all of the covenants and restrictions aforesaid may be enjoined upon the application of the Grantor, its successors and assigns, or any person or persons who have derived or shall derive title, directly or indirectly, from the Grantor to any lot or lots shown on said Map."

uniformity coupled with other evidence of the grantor's intent evidenced that the restrictions were binding on all those who derived title either directly or indirectly from the grantor and that the grantor, having established a common scheme, could not subsequently revoke those restrictions. Therefore, the provisions in subsequent deeds that reserved the right to revoke the restriction on subdivision, and the provisions in other subsequent deeds that purported to revoke those restrictions as to section E; see footnote 3; were invalid.

We remanded the case to the trial court to consider the defendants' special defense that they were entitled to judgment in this case pursuant to the provisions of the act, which they claimed required the plaintiffs to preserve their interest in enforcing the restriction by filing a notice in the defendants' chain of title within the forty-year period specified by the act. See General Statutes § 47-33f.[4] The trial court found that the special defense of the act did not apply and rendered judgment for the plaintiffs. The defendants now bring this appeal.

We note, as a preliminary matter, that the only issue that was remanded to the trial court was the defendants' claim that "the plaintiffs' interest in the right to enforce the restriction against resubdivision of the subject property has been rendered null and void by operation of law under the [act]."[5] *Mannweiler I*, supra, 46 Conn.

---

[4] General Statutes § 47-33f provides in relevant part: "Notice of claim filed within forty-year period. (a) Any person claiming an interest of any kind in land may preserve and keep effective that interest by recording, during the forty-year period immediately following the effective date of the root of title of the person whose record title would otherwise be marketable, a notice in writing, duly verified by oath, setting forth the nature of the claim. . . ."

[5] The defendants also claim that the trial court improperly (1) found defects in the title that exist because provisions in the root of title were void, (2) applied a doctrine of common scheme and development that gave effect to events and transactions outside the plaintiffs' chain of title, (3) failed to require that the plaintiffs file a notice to preserve their claim and (4) failed to find that the actions of the plaintiffs to enforce a private restriction were barred by the statute of limitations. We decline to review any issues outside the scope of the remand. See also footnote 2.

App. 544. On a remand to the trial court for a specific ruling, the trial court may consider only the subject of the remand. See *Humphrey* v. *Gerard*, 84 Conn. 216, 79 A. 57 (1911). In *Mannweiler I*, we stated that "the defendants claim, as an alternate ground for affirmance, that the plaintiffs' interest in the right to enforce the restriction against resubdivision of the subject property has been rendered null and void by operation of law under the Marketable Title Act. Specifically, they argue that the act obligates the plaintiffs to record in the defendants' chain of title a notice setting forth the nature of their claim. In the absence of such a notice, they contend, the plaintiffs' interest in the defendants' land is nonexistent. As noted earlier, the trial court did not rule on that claim, which was raised as a special defense. Although that ground was raised as an alternate ground for sustaining the judgment, we believe that it is better left to the trial court to determine. We therefore decline to review this claim." (Internal quotation marks omitted.) *Mannweiler I*, supra, 544. This court then remanded the case to the trial court "to consider the defendants' special defense relating to the Marketable Title Act." Id.

The trial court must follow the specific direction of our remand. See *Halpern* v. *Board of Education*, 231 Conn. 308, 311, 649 A.2d 534 (1994). The only issue, therefore, that the trial court could have considered, and the only one that we will consider, is whether the plaintiffs, all of whom are grantees taking title from a common grantor as part of a common scheme or plan of development, are precluded from enforcing the restrictive covenants against other grantees by operation of the act. All other claims and issues argued by the parties or decided by the trial court were not part of the remand and we do not consider them. See *Patron* v. *Konover*, 43 Conn. App. 645, 649 n.3, 685 A.2d 1133 (1996), cert. denied, 240 Conn. 911, 690 A.2d 400 (1997).

The defendants argue that, pursuant to General Statutes §§ 47-33b through 47-33*l*, they hold marketable title to section E of Hop Brook. Specifically, the defendants argue that the act extinguishes the subdivision restrictions on section E because there was no notice preserving the restrictions, which were contained in the original deeds of conveyance to the plaintiffs' predecessors in interest. The defendants make this argument pursuant to General Statutes § 47-33d, which provides that "a general reference . . . to . . . use restrictions . . . are not sufficient to preserve them, unless specific identification is made therein of a recorded title transaction which creates the . . . use restriction or other interest . . . ." The plaintiffs argue, to the contrary, that the 1989 deed of conveyance to the defendants provided them with actual notice of the covenants and restrictions that were found in the plaintiffs' chain of title and therefore there was no requirement to record an additional notice pursuant to the act. We agree with the plaintiffs.

On the basis of this court's determinations in *Mannweiler I* that the provision in a 1937 conveyance authorizing the revocation of the restrictions and the provision in a 1946 deed to the defendants' predecessors in interest that purported to revoke all covenants on section E were null and void, the trial court found that the defendants took title subject to those defects because the defendants' marketable record title could not extinguish defects that were created in the statutory root of title.

Pursuant to the act, "any person who has an unbroken record chain of title to an interest in land for a period of forty years, plus any additional period of time necessary to trace the title back to the latest connecting title instrument of earlier record (which is the 'root of title' under the act) has a 'marketable record title' subject only to those pre-root of title matters that are excepted

under the statute or are caused to reappear in the latest forty year record chain of title. *Mizla* v. *Depalo,* 183 Conn. 59, 64, 438 A.2d 820 (1981)." (Internal quotation marks omitted.) *Il Giardino, LLC* v. *Belle Haven,* 254 Conn. 502, 536, 757 A.2d 1103 (2000); see General Statutes § 47-33c.

The act "declares null and void any interest in real property not specifically described in the deed to the property which it purports to affect, unless within a forty year period, a notice specifically reciting the claimed interest is placed on the land records in the affected land's chain of title." *Schulz* v. *Syvertsen,* 219 Conn. 81, 84, 591 A.2d 804 (1991). " 'The ultimate purpose of all the Marketable Title Acts is to simplify land title transactions through making it possible to determine marketability by limited title searches over some reasonable period of the immediate past and thus avoid the necessity of examining the record back into distant time for each new transaction.' " *Mizla* v. *Depalo,* supra, 183 Conn. 64 n.9, quoting P. Basye, Clearing Land Titles (2d Ed. 1970) § 172, p. 368.

Here, the plaintiffs' interest in enforcing the restrictions on section E of Hop Brook was not nullified because the warranty deeds containing the covenants and restrictions were specifically described in the defendants' deed to section E. The 1989 deed of conveyance to the defendants states specifically: "2. Possible conditions and restriction as set forth in two Warranty Deeds from J. H. Whittemore Company to Louis A. Dibble dated September 30, 1927 and July 15, 1930 recorded respectively in Vol. 78, Pages 41 and 642 of the Naugatuck Land Records, and conditions and restrictions as set forth in the deed from J. H. Whittemore Company to Louis A. Dibble dated September 26, 1946 and recorded September 26, 1946 in Vol. 97, page 377 of the Naugatuck Land Records, as supplemented by Warranty Deed between those parties dated Septem-

ber 26, 1946 recorded December 7, 1946 in Vol. 97, Page 493 of the Naugatuck Land Records." The defendants' own expert conceded that the reference in the defendants' deed to "possible conditions and restriction" is a specific reference. Thus, the defendants were put on notice in their own chain of title that the original grantor had placed certain covenants and restrictions on the land and that these covenants and restrictions run with the land in favor of all the lots in the subdivision, including the lot on which the defendants want to build multiple buildings.[6] See *Hamilton* v. *Nutt*, 34 Conn. 501, 509–10 (1868) (when deed recorded on land records, law presumes that every interested person has knowledge of deed and its contents); see also *Clean Corp.* v. *Foston*, 33 Conn. App. 197, 202, 634 A.2d 1200 (1993) (purchaser has actual notice if he knows facts sufficient to put reasonable person on inquiry that, if prosecuted with reasonable diligence, would certainly lead to discovery of conflicting claim).

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] We note that although the plaintiffs did not expressly raise as an alternate ground for affirmance the argument that the 1989 deed provided the defendants with adequate notice of the restrictions, they made this argument in their brief, and the defendants had an opportunity to respond to this argument. Given the fact that neither party would be prejudiced by our doing so, we treat this argument as if it had been properly raised as an alternate ground for affirmance. See Practice Book § 63-4. We further note that even though the trial court did not rule on this issue we will consider, in the interests of judicial economy, whether, as a matter of law, the trial court's judgment can be sustained on this alternate ground. See *Skuzinski* v. *Bouchard Fuels, Inc.*, 240 Conn. 694, 702–703, 694 A.2d 788 (1997). In this regard, we note that the question of whether the defendants had notice of the restriction as set forth in their deed presents a question of law. See *Hamilton* v. *Nutt*, 34 Conn. 501, 510 (1868).