DARRYL JOHNSON ET AL. *v.* THANONGCHIT
SOURIGNAMATH ET AL.
(AC 25076)

Lavery, C. J., and Schaller and Hennessy, Js.

Argued January 11—officially released July 26, 2005

*Jeremiah Donovan,* with whom was *Terry Donovan,* for the appellants (defendants).

*Howard M. Gould,* for the appellees (plaintiffs).

LAVERY, C. J. In this quiet title action, the defendants, Thanongchit Sourignamath, Bounthavy Sourignamath, D. Scott Ward and Kathleen A. Ward, appeal from the judgment of the trial court concluding that the plaintiffs, Darryl Johnson, Denise Myers, Darlene Graves, Lori Johnson Jerome and the estate of Walter Rochette (Joan Rochette and Dawn O'Dell, trustees), have a deeded right-of-way over the properties of the defendants. The defendants claim on appeal that the court improperly determined that the plaintiffs had a right-of-way (1) that never had been conveyed to them, (2) despite provisions of the Marketable Title Act (act), General Statutes §§ 47-33b through 47-33*l*, that operate to extinguish any preexisting right-of-way and (3) located over the defendants' properties. We agree with the defendants' second claim and, accordingly, reverse the judgment of the trial court.[1]

The following facts and procedural history are relevant. The Ward defendants and the Sourignamath defendants are two married couples owning neighboring properties in Old Saybrook. Running generally north and south alongside their properties is a private street in which each couple owns an undivided one-half interest.[2] The private street originates from a town road at its southern end and terminates about eighty-five feet from the southern border of an approximately twelve acre parcel to the north of the defendants' properties. Those eighty-five feet traverse the Sourignamaths' property.

---

[1] Because the defendants' second claim is dispositive of the appeal, we do not address directly claims one and three although, to some degree, they implicitly are considered in our analysis.

[2] The Sourignamaths' property is located to the rear of the Wards' property. Although there is a third property between the Wards' property and the private street for much of the length of the street, the owners of the third property do not share an interest in the street and are not parties to this action.

The twelve acre parcel, which is owned by the plaintiffs, borders on several other properties, but no roads and is, therefore, landlocked.

The plaintiffs are relatives who acquired their respective shares of the twelve acre parcel through inheritance; the parcel has been owned by various family members since 1930. The certificates of devise by which the plaintiffs obtained title, as well as all but one[3] of the instruments in their chain of title extending to 1878, include a description of the property along with the following language: "[W]ith the ordinary right of way for passing and repassing to and from said lot of land to the highway that was always used by the owners of said tract of land."

In 1991, the Sourignamath defendants acquired their property by warranty deed. That deed described their parcel and their half interest in the private road, and recited that the property was "[s]ubject to such easements as of record appear." In 1997, the Ward defendants acquired their property by warranty deed. That deed described their parcel and their half interest in the private road, but included no language stating that their parcel is subject to easements. None of the deeds in the defendants' chains of title, extending to 1922, includes any language indicating that their properties are subject to a right-of-way in favor of the plaintiffs' parcel. Moreover, the general easement language included in the Sourignamaths' deed does not appear elsewhere in their chain of title.

The Wards and the Sourignamaths share common predecessors in title, one of whom is Lillian D. Heifetz. Heifetz owned property that ultimately was subdivided into several parcels, including those of the defendants. In 1984, Heifetz caused to be prepared a survey map

---

[3] A certificate of devise dated August 15, 1907, omits the pertinent language.

showing a proposed subdivision of her property. The map is dated April 9, 1984, and was filed in the office of the town clerk of Old Saybrook on April 25, 1984. The map shows the plaintiffs' property to the north of Heifetz' property and the town road to the south. Within the area depicting the plaintiffs' property, the following is transcribed: "NOTE: DEED INDICATES 'THE ORDINARY RIGHT OF WAY FOR PASSING AND RE-PASSING TO AND FROM SAID LOT OF LAND TO THE HIGHWAY THAT HAS ALWAYS BEEN USED BY THE OWNERS OF SAID TRACT OF LAND.' " There is no visual representation of the referenced right-of-way on the map to indicate its location.

In December, 1997, after disagreement arose among the parties as to the existence and location of the right-of-way, the plaintiffs commenced the present action with a two count complaint. In count one, the plaintiffs alleged that, by virtue of the language in the deeds comprising their chain of title, they were owners of record of a right-of-way that passed over a portion of the Sourignamaths' property and down the private street owned by the defendants. In count two, the plaintiffs alleged that they had acquired the described right-of-way via prescription. After a trial in 2001 to the court, *Hon. Daniel F. Spallone,* judge trial referee, the court found that the plaintiffs had a deeded right-of-way in the location alleged.[4] Because that finding made consideration of the plaintiffs' second claim unnecessary, the court dismissed count two of the complaint.

Thereafter, the defendants appealed from the court's judgment as to count one, and the plaintiffs cross appealed from the dismissal of count two. *Johnson* v. *Sourignamath,* 75 Conn. App. 403, 404, 816 A.2d 631 (2003). This court reversed the dismissal of count two

---

[4] The court determined the location of the right-of-way on the basis of evidence regarding the plaintiffs' and their predecessors' customary usage.

as premature and remanded the case for the taking of further evidence on, and reconsideration of, count one. Id., 407–408. As to the remand, this court was concerned particularly with the trial court's reliance on expert testimony regarding some of the deeds in the plaintiffs' chain of title, rather than admission into evidence of the deeds themselves. Id., 405. Moreover, we instructed the court on remand to determine the parties' respective roots of title so that the record would be sufficient for us to address their claims relating to the act. Id.

Further proceedings were conducted on August 12, 2003, and the requested additional evidence was submitted. In a November 24, 2003 memorandum of decision, the court, *Aurigemma, J.*, made findings as to the parties' roots of title and, citing General Statutes § 47-33e, concluded that "the plaintiffs have proved their right of access by deed and that the deeded right-of-way has not been extinguished." Judge Aurigemma also agreed with Judge Spallone as to the location of the right-of-way and rejected the defendants' claim that it was located elsewhere. Consequently, judgment was rendered in the plaintiffs' favor on count one and count two again was dismissed.[5] The defendants subsequently filed a motion for reconsideration, which the court denied. The present appeal followed.

The dispositive claim on appeal is whether any right-of-way that the plaintiffs, or their predecessors in title, might once have possessed has been extinguished by operation of the act. We first note our standard of review. The interpretation of a statute, as well as its applicability to a given set of facts and circumstances, presents a question of law over which our review is

[5] In accordance with our direction; see *Johnson* v. *Sourignamath*, supra, 75 Conn. App. 407; the court in its memorandum of decision reserved judgment as to count two pending final resolution of this appeal. The judgment file, however, purports to dismiss count two. Regardless, further proceedings on count two are now necessary.

plenary. *Juchniewicz* v. *Bridgeport Hospital*, 86 Conn.
App. 310, 314, 860 A.2d 1275 (2004), cert. granted on
other grounds, 272 Conn. 917, 866 A.2d 1287 (2005),
citing *Commissioner of Social Services* v. *Smith*, 265
Conn. 723, 734, 830 A.2d 228 (2003). Furthermore, the
meaning of language used in a deed also raises a legal
issue such that, "when faced with a question regarding
the construction of language in deeds, the reviewing
court does not give the customary deference to the trial
court's factual inferences." (Internal quotation marks
omitted.) *Wood* v. *Amer*, 54 Conn. App. 601, 605, 736
A.2d 162 (1999), aff'd, 253 Conn. 514, 755 A.2d 175
(2000).

As recently explained by our Supreme Court, "[t]he
ultimate purpose of [the act] is to simplify land title
transactions through making it possible to determine
marketability by limited title searches over some rea-
sonable period of the immediate past and thus avoid
the necessity of examining the record back into distant
time for each new transaction. . . . [The act is]
designed to decrease the costs of title assurance by
limiting the period of time that must be covered by a
title search." (Internal quotation marks omitted.)
*Coughlin* v. *Anderson*, 270 Conn. 487, 506–507, 853 A.2d
460 (2004).

"Pursuant to the act, any person who has an unbroken
record chain of title to an interest in land for a period
of forty years, plus any additional period of time neces-
sary to trace the title back to the latest connecting
title instrument of earlier record[6] (which is the root of

---

[6] General Statutes § 47-33c provides: "Any person having the legal capacity
to own land in this state, who has an unbroken chain of title to any interest
in land for forty years or more, shall be deemed to have a marketable record
title to that interest, subject only to the matters stated in section 47-33d. A
person has such an unbroken chain of title when the land records of the
town in which the land is located disclose a conveyance or other title
transaction, of record not less than forty years at the time the marketability
is to be determined, which conveyance or other title transaction purports
to create such interest in land, or which contains language sufficient to

title[7] under the act) has a marketable record title[8] subject only to those pre-root of title matters that are excepted under the statute or are caused to reappear in the latest forty year record chain of title. . . . The act declares null and void[9] any interest in real property not specifically described in the deed to the property which it purports to affect, unless within a forty year period, a notice specifically reciting the claimed interest is placed on the land records in the affected land's chain of title." (Internal quotation marks omitted.) Id., 507; see also *Schulz* v. *Syvertsen*, 219 Conn. 81, 84, 591 A.2d 804 (1991); *Mizla* v. *Depalo*, 183 Conn. 59, 65–66, 438 A.2d 820 (1981).

In this case, the property purported to be affected by an interest, namely, the alleged right-of-way, is the

transfer the interest, either in (1) the person claiming that interest, or (2) some other person from whom, by one or more conveyances or other title transactions of record, the purported interest has become vested in the person claiming the interest; with nothing appearing of record, in either case, purporting to divest the claimant of the purported interest."

[7] General Statutes § 47-33b (e) provides in relevant part: " 'Root of title' means that conveyance or other title transaction in the chain of title of a person, purporting to create or containing language sufficient to transfer the interest claimed by such person, upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined. . . ."

[8] General Statutes § 47-33b (a) provides: " 'Marketable record title' means a title of record which operates to extinguish such interests and claims, existing prior to the effective date of the root of title, as are stated in section 47-33e . . . ."

[9] General Statutes § 47-33e provides: "Subject to the matters stated in [General Statutes §] 47-33d, such marketable record title shall be held by its owner and shall be taken by any person dealing with the land free and clear of all interests, claims or charges whatsoever, the existence of which depends upon any act, transaction, event or omission that occurred prior to the effective date of the root of title. All such interests, claims or charges, however denominated, whether legal or equitable, present or future, whether those interests, claims or charges are asserted by a person sui juris or under a disability, whether that person is within or without the state, whether that person is natural or corporate, or is private or governmental, are hereby declared to be null and void."

property of the defendants. The defendants' root of title is a 1945 warranty deed from Demetrio Carpi and Josephine Carpi to Charles LaPlace and Annie LaPlace.[10] All of the intermediary deeds connecting the LaPlaces to the defendants were submitted at trial, and those deeds demonstrate that the defendants possess unbroken chains of title for the requisite period such that they are entitled to invoke the provisions of the act.[11] General Statutes § 47-33c. It is undisputed that none of the deeds in the defendants' chains of title, from the 1945 warranty deed through the deeds by which the defendants took title to their properties, includes language conveying or describing a right-of-way in favor of the plaintiffs' property. The question thus presented is whether the reference on a map in the defendants' chain of title to the right-of-way language in deeds in the plaintiffs' chain of title operates to render the claimed right-of-way viable. Although we agree that the defendants had notice that the plaintiffs purported to have some interest, somewhere, it nevertheless was

[10] We observe that the court incorrectly determined the defendants' root of title to be the next instrument previous in the chain of title to the 1945 deed, a 1922 warranty deed from Joseph Daer to Demetrio Carpi and Josephine Carpi. Neither of the parties contests this finding on appeal, likely because it is immaterial. In particular, because the 1922 deed, like the 1945 deed, lacks any reference to a right-of-way in favor of the plaintiffs' property and because there are references to the right-of-way in the plaintiffs' chain of title predating both the 1922 and 1945 deeds, the discrepancy does not impact the analysis.

[11] To the extent that the plaintiffs have argued that the easement reference on the Heifetz map "purport[s] to divest"; General Statutes § 47-33c; the defendants of their claimed interests in their parcels, thus breaking their chains of title such that the provisions of the act are inapplicable, that argument is misplaced. Section 47-33c "pertains only to instruments within the marketable record chain of title which purport to 'divest,' i.e., 'take from' or 'acquire,' the full title claimed by the particular claimant. Hence, such recorded instruments as attachments, liens, mortgages, leases, life estates *or other types of encumbrances* do not purport to 'divest' a fee simple title." (Emphasis added.) Connecticut Bar Association, Connecticut Standards of Title (1999), standard 3.6, comment four.

not the type of notice sufficient under the act to preserve a right-of-way over the defendants' properties.

To begin, in many contexts courts have held that when a recorded instrument in a party's chain of title makes reference to some extrinsic document, the party thereby is charged with constructive or actual notice of the contents of the extrinsic document. See generally annot., 89 A.L.R.3d 901 (1979); see also *Andretta* v. *Fox New England Theatres, Inc.*, 113 Conn. 476, 480, 155 A. 848 (1931) ("[o]ne who has knowledge of the existence of a deed, to which he has access, and which affects the title to property in which he is interested, will, in equity, be presumed to have knowledge of the contents of the deed" [internal quotation marks omitted]). In *Mannweiler* v. *LaFlamme*, 65 Conn. App. 26, 32–34, 781 A.2d 497 (2001), for example, we concluded that the defendants had notice of, and were bound by, restrictive covenants described in deeds in the plaintiffs' chain of title, when the deed by which the defendants took title made reference to the deeds describing the covenants. Thus, the lack of a description of the covenants in the defendants' chain of title did not render them null and void under the act. Here, similarly, the map in the defendants' chain of title[12] referred to the

---

[12] We note here that a map filed in town land records, to be incorporated into a deed such that it becomes part of the chain of title, ordinarily must be certified as accurate by a surveyor and referenced specifically by the deed. See *Powers* v. *Olson*, 252 Conn. 98, 107–108, 742 A.2d 799 (2000); *Marshall* v. *Soffer*, 58 Conn. App. 737, 742–43, 756 A.2d 284 (2000); General Statutes § 7-31. Although Heifetz's proposed subdivision map was not so certified or referenced, Michael Wells, the attorney who had performed a title search on behalf of the Sourignamaths when they purchased their property, testified that he was aware of the map; thus, the Sourignamaths had actual, if not constructive, notice of the claimed right-of-way.

Regarding the Wards, the record does not include any evidence as to what their title search uncovered. By the time they purchased their property in 1997, however, a second map, prepared after a boundary survey of the Heifetz property, had been placed in the town's land records. This map, which included the same notation as the previous one as to the claimed right-of-way, was certified as accurate by a surveyor and was referenced in the deed by which Heifetz conveyed her property to Salvatore Zimmitti,

plaintiffs' deed and alerted the defendants to the provisions therein.

Nevertheless, the description of the purported right-of-way is entirely vague and lacks any indication as to the way's origin. Under the act and a recent decision of our Supreme Court interpreting it, that lack of specificity is fatal to any argument that the right-of-way has been preserved. Pursuant to General Statutes § 47-33e,[13] an interest in land, "the existence of which depends upon any act, transaction, event or omission that occurred prior to the effective date of the root of title," is declared null and void, subject to the exceptions stated in General Statutes § 47-33d. If none of the statutory exceptions applies, the owner of the land has marketable record title free and clear of the preroot interest. See General Statutes § 47-33d. The enumerated exceptions include "interests and defects which are created by or arise out of the muniments[14] of which the chain of record title is formed"; General Statutes § 47-33d (1); but the following qualification is added: "[P]rovided a *general reference* in the muniments, or any of them, *to easements,* use restrictions or other interests *created prior to the root of title are not sufficient to preserve them, unless specific identification is made therein of a recorded title transaction which creates the easement,* use restriction or other interest . . . ." (Emphasis added.) General Statutes § 47-33d (1).

Our Supreme Court recently decided a case concerning the extinguishment of an easement due to the failure

---

another of the defendants' predecessors in title. Thus, the second map was in the chain of title and through it, the Wards had constructive notice of the claimed right-of-way.

[13] See footnote 9.

[14] The term "muniments of title" is defined, in relevant part, as "[t]he records of title transactions in the chain of title of a person purporting to create the interest in land claimed by such person and upon which he relies as a basis for the marketability of his title, commencing with the root of title and including all subsequent transactions." Black's Law Dictionary (6th Ed. 1990). The Heifetz maps, thus, are muniments of the defendants' titles.

of the description thereof in the deeds transferring the encumbered property to meet the requirements of § 47-33d (1). In *Coughlin* v. *Anderson*, supra, 270 Conn. 487, the easement at issue reserved to the owner of the dominant estate the right to install utility conduits over the servient estate. Id., 491. The easement was created in 1952 when the owner of both parcels conveyed the servient estate, reserving the easement to himself. Id. The language creating the easement in the 1952 convey-ance identified particularly its purpose, to whom it was reserved and the property that was encumbered. See id., 491 n.3. The description of the easement was included in subsequent deeds conveying the servient estate in 1954, 1959, 1963 and 1968. Id., 491–92. After the property was again conveyed in 1996, a dispute arose that raised the question of the continued viability of the easement.[15]

The court determined the servient owner's root of title to be the 1954 deed. Id., 496; see General Statutes § 47-33b (e). It concluded that, insofar as the convey-ance creating the easement predated the root of title, the act required that the postroot deeds include specific references to the volume and page of the land records for the 1952 deed creating the easement and because they did not, the easement had been extinguished by operation of law. *Coughlin* v. *Anderson*, supra, 270 Conn. 496–97. "Although the 1954, 1959, 1963 and 1968 deeds contained language stating that [the servient estate] was subject to an easement . . . such language was merely a 'general reference' to the easement that,

---

[15] The procedural posture of *Coughlin* is somewhat unusual. Because the 1996 deed conveying the servient estate omitted any reference to the easement, the grantee brought an action against the grantor alleging breach of the warranty against encumbrances and, further, against the attorneys who represented him in connection with the property acquisition for legal malpractice for not discovering the easement. The success of both claims depended on the grantee establishing the continued viability of the easement and the associated diminishment in value of the property.

pursuant to § 47-33d (1), was insufficient to preserve its validity."[16] Id., 497.

On appeal, the parties did not dispute the trial court's conclusion on that point; id., 507; and, therefore, it was not a direct subject of review. The Supreme Court, however, characterized the trial court's conclusion as proper, and the resolution of the claims raised was premised on the correctness of the trial court's ruling. Id.

The dynamic of this case is similar. Here, the language in the deeds in the plaintiffs' chain of title referencing the right-of-way appears as early as 1878. If the right-of-way ever was validly created,[17] that creation necessarily occurred prior to the defendants' root of title, the 1945 deed. Accordingly, specific identification of a recorded title transaction creating the right-of-way was necessary to preserve it. General Statutes § 47-33d (1). Because such identification unquestionably is lacking, the alleged right-of-way, if it ever existed, has been extinguished by operation of law.[18] See *Coughlin* v. *Anderson*, supra, 270 Conn. 496–97.

---

[16] In contrast, in *Mannweiler* v. *LaFlamme*, supra, 65 Conn. App. 33–34, covenants and restrictions in the plaintiffs' chain of title and predating the defendants' root of title were found to remain viable as to the defendants, because the deed by which the defendants took title referred specifically to the deeds containing the covenants and restrictions by page and volume number.

[17] There is nothing in the record evidencing the origin of the purported right-of-way. Wells testified that he searched the plaintiffs' chain of title and did not find anything "show[ing] that they received either by grant or reservation a right-of-way over any other property." The plaintiffs' expert witness testified that he had searched their chain of title back as far as the town records would allow and that the same general language appeared throughout.

[18] Our analysis assumes the claimed right-of-way was created in a recorded conveyance, which, for whatever reason, no longer is traceable. If, however, the right-of-way originally was created by operation of law or by an unrecorded instrument, it still necessarily was created preroot, and the plaintiffs would have had to file a sworn notice pursuant to General Statutes § 47-33f to preserve the way. It is clear that they did not. As noted by the authors of the Connecticut Standards of Title, "the language of [General Statutes

The rule imposed by the act is a wholly sensible one. "The reason that a general reference to pre-root of title interests is not sufficient to preserve and prevent their extinguishment is to avoid any necessity for a search of the record back of the root of title, as well as to eliminate the uncertainties caused by such general references." Connecticut Bar Association, Connecticut Standards of Title (1999), standard 3.10, comment one. Effectively, it requires one claiming a deeded right-of-way over the property of another to establish conclusively that at some point, some owner in the servient estate's chain of title actually made a conveyance validly creating that right-of-way. Otherwise, an invalid or nonexistent right-of-way could ripen into existence over a period of time through the mere insertion into the land records of language asserting it. The circumstances of the present matter are especially problematic because the language supposedly evidencing the right-of-way is wholly imprecise and appears mainly in the dominant chain of title, making its way into the servient chain of title only by a happenstance reference on a subdivision map. To find a valid right-of-way in this situation would run contrary to "the policy of our law that all interests in land shall, as far as practicable, appear on the land records so that they may be easily and accurately traced . . . ." *Hawley* v. *McCabe*, 117 Conn. 558, 564, 169 A. 192 (1933).

The court's memorandum of decision was concise, and its statutory analysis is not altogether evident. It appears, however, that the court applied the provisions of the act from the perspective of the plaintiffs' chain of title rather than that of the defendants and concluded that, because the general right-of-way language appeared throughout, the plaintiffs had established the

§ 47-33d (1)] effectively eliminates such interests when created either by operation of law or by an unrecorded instrument." Connecticut Bar Association, Connecticut Standards of Title (1999), standard 3.10, comment three.

right-of-way's existence.[19] The court did not consider at all the applicability of the act from the defendants' perspective. This analysis was improper. As our Supreme Court has explained, it is impermissible for a party "to use the act affirmatively to create a property interest that did not otherwise exist." *Il Giardino, LLC* v. *Belle Haven Land Co.*, 254 Conn. 502, 538, 757 A.2d 1103 (2000). The act never has been applied "so as to *create* an easement that otherwise did not exist, or to preclude a party involved in a quiet title action from claiming that the party asserting the interest or its predecessor in title never held the asserted interest." (Emphasis in original.) Id. Rather, "the act, subject to certain exceptions, functions to extinguish those property interests *that once existed*, and would still exist but for the absence from the land records in the affected property's chain of title of a notice specifically reciting the claimed interest." (Emphasis in original.) Id.; cf. annot., 31 A.L.R.4th 11, § 2 [a] (1984) ("general purpose of marketable record title statutes and similar enactments is to clear titles of record from the clouds, encumbrances, conditions, or limitations of old and perhaps abandoned or to-be-abandoned instruments or claims, and possible or ostensible interests or rights, or those of dubious value or validity"); Connecticut Bar Association, Connecticut Standards of Title, supra, c. III, introduction (noting act's dual purpose of limiting title searches and "protect[ing] property owners from the risk of ancient interests and defects in the title by a legislative nullification of such claims and defects").

In their appellate brief, the plaintiffs argue cursorily that another section of the act that creates an exception from extinguishment for "apparent easements"; General Statutes § 47-33d (5); is applicable. Pursuant to General Statutes § 47-33h, the act "shall not be applied . . . to bar or extinguish any easement or interest in

---

[19] The plaintiffs reiterate this rationale on appeal.

the nature of an easement . . . if (1) the existence of such easement or interest is evidenced by the location beneath, upon or above any part of the land described in such instrument of any pipe, valve, road, wire, cable, conduit, duct, sewer, track, hole, tower or other physical facility and whether or not the existence of such facility is observable . . . ." The plaintiffs, however, did not raise this argument before the trial court and, pursuant to our rules of practice, we are not bound to address claims raised for the first time on appeal. Practice Book § 60-5; see also *Solomon* v. *Connecticut Medical Examining Board*, 85 Conn. App. 854, 862, 859 A.2d 932 (2004), cert. denied, 273 Conn. 906, 868 A.2d 748 (2005). Because resolution of this issue necessarily would require us to make factual findings and credibility determinations on the basis of a cold record, we decline to address it.

The judgment is reversed and the case is remanded for further proceedings on count two in accordance with law.

In this opinion the other judges concurred.