******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

VILLAGE APARTMENTS, LLC *v.* STANLEY P.
WARD, JR., ET AL.
(AC 38047)

Lavine, Alvord and Bear, Js.

*Argued September 21—officially released December 13, 2016*

(Appeal from Superior Court, judicial district of New
London, Moukawsher, J.)

*Matthew G. Berger*, for the appellant (plaintiff).

*Garon Camassar*, for the appellees (named defendant et al.).

*Opinion*

BEAR, J. The plaintiff, Village Apartments, LLC, appeals from the judgment of the trial court rendered in favor of the defendants Stanley P. Ward, Jr., and Rose Mary Ward, after a trial to the court, quieting title to a claimed easement in the form of a right-of-way (right-of-way) over the defendants' real property (property).[1] The court determined that the Marketable Title Act (act), General Statutes § 47-33b et seq., extinguished the right-of-way because it was not preserved in the roots of title of the parties as required by the act and did not meet the apparent easement exceptions in General Statutes § 47-33h. On appeal, the plaintiff claims that the court erred in finding that the act extinguished its right-of-way (1) because it predated and was not properly set forth in either root of title; and (2) although there were visible, physical indicators of the existence of the right-of-way. We affirm the judgment of the trial court.

In the first count of its complaint against the defendants, the church, and Citizens Bank, dated July 9, 2012, and returned to the court on August 1, 2012, the plaintiff sought to quiet title to the alleged deeded right-of-way over the defendants' property and the church's property.[2] The defendants alleged as a special defense, inter alia, that the act extinguished any rights that the plaintiff had to the claimed right-of-way. Following a trial to the court,[3] the court, *Moukawsher, J.*, rendered judgment in favor of the defendants and Citizens Bank on June 9, 2015, and in favor of the plaintiff, as stipulated between it and the church. This appeal followed.

The following factual findings of the court are relevant to this appeal. In 1877, an easement in the form of a right-of-way was created over property now owned separately by the defendants and the church in favor of property now owned by the plaintiff. Pursuant to the act, the plaintiff's root of title[4] is a 1968 deed that conveyed the property "[t]ogether with and subject to such rights of way, pipe line and other easements and privileges as will of record appear." The defendants' roots of title are one or two 1944 deeds[5] that referred to a "Frank Calvert" "right of way."[6] The 1944 deeds did not set forth that the property is subject to the Frank Calvert right-of-way, did not describe the right-of-way's metes and bounds, and did not incorporate by volume and page the title transaction that created that right-of-way.

The court found that as of the dates of the trial, the alleged right-of-way area showed no evidence of ruts or marks that might suggest that it had been used as a cart path or track as claimed by the plaintiff. Photographs in evidence showed that the only open area within the alleged right-of-way revealed nothing to suggest its use as a cart path or track. The photographs

showed that much of the disputed area was strewn with boulders, was covered with mature trees, and was incapable of accommodating any kind of path. From this and other evidence, the court concluded that there were no signs of a cart path or track on the property.

In its memorandum of decision, the court concluded that the defendants' muniments of title[7] did not describe the right-of-way sufficiently to enforce it and that the muniments of title did not specifically identify the recorded title transaction that created the right-of-way. In its analysis, the court rejected the plaintiff's argument that references to the right-of-way in the 1944 deeds were necessary to determine the location of the five tracts conveyed therein. Consequently, the court concluded that the act extinguished the right-of-way unless an exception applied. The plaintiff argued that merestones[8] marking the right-of-way, a wire fence running along it, and signs of a cart path were physical evidence sufficient to satisfy one of the § 47-33h exceptions. The court concluded that fences and merestones were not included in the list of exceptions contained in § 47-33h and, although roads and tracks were included in the list, there were no signs of a cart path or tracks on the property. Accordingly, the court found that § 47-33h did not apply. In light of these determinations, the court declared that the defendants' property was not subject, under General Statutes § 47-31, to the purported right-of-way described in volume 21, page 99, and volume 21, page 100 of the Montville land records.[9] This appeal followed.

I

The plaintiff claims that the trial court erred in determining that the act extinguished the right-of-way because the right-of-way predated the roots of title. Specifically, it contends that the reference to the Frank Calvert right-of-way in the 1944 deeds that constitute the defendants' roots of title is a specific reference satisfying § 47-33h. Additionally, the plaintiff argues that reference to the right-of-way in the deeds puts a reasonable title searcher on notice of the existence of an easement and that determination of the location of the right-of-way was necessary to ascertain the location of the three parcels constituting the defendants' property. The defendants argue that their roots of title do not specifically identify a recorded title transaction creating the right-of-way and that the description of the right-of-way was too vague to convey it. We agree with the defendants.

We begin by setting forth the applicable standard of review. "The interpretation of a statute, as well as its applicability to a given set of facts and circumstances, presents a question of law over which our review is plenary. . . . Furthermore, the meaning of language used in a deed also raises a legal issue such that, when faced with a question regarding the construction of

language in deeds, the reviewing court does not give the customary deference to the trial court's factual inferences." (Citation omitted; internal quotation marks omitted.) *Johnson* v. *Sourignamath*, 90 Conn. App. 388, 393–94, 877 A.2d 891 (2005).

"Pursuant to the act, any person who has an unbroken record chain of title to an interest in land for a period of forty years, plus any additional period of time necessary to trace the title back to the latest connecting title instrument of earlier record[10] (which is the root of title under the act) has a marketable record title[11] subject only to those pre-root of title matters that are excepted under the statute or are caused to reappear in the latest forty year record chain of title. . . . The act declares null and void[12] any interest in real property not specifically described in the deed to the property which it purports to affect, unless within a forty year period, a notice specifically reciting the claimed interest is placed on the land records in the affected land's chain of title." (Footnotes added; internal quotation marks omitted.) *Coughlin* v. *Anderson*, 270 Conn. 487, 507, 853 A.2d 460 (2004).

"Even marketable record title, however, may be subject to certain interests. Section 47-33d[13] provides in relevant part: 'Such marketable record title is subject to: (1) All interests and defects which are created by or arise out of the muniments of which the chain of record title is formed . . . .' Thus, if an easement over a subject piece of property arises out of one or more of the muniments, including the deeds, of which the chain of record title is formed, a property owner takes the land subject to that easement. This general provision is subject to a proviso contained in § 47-33d (1), however, which provides that 'a general reference in the muniments, or any of them, to easements, use restrictions or other interests created prior to the root of title are not sufficient to preserve them, unless specific identification is made therein of a recorded title transaction which creates the easement, use restriction or other interest . . . .' " (Footnote added.) *McBurney* v. *Cirillo*, 276 Conn. 782, 808–809, 889 A.2d 759 (2006), overruled in part on other grounds by Batte-*Holmgren* v. *Commissioner of Public Health*, 281 Conn. 277, 284–89, 914 A.2d 996 (2007). Section 47-33d therefore requires either a specific reference in the muniments to easements, use restrictions, or other interests or a general reference to such interests accompanied by a specific identification of a recorded title transaction creating the easement.

"The reason that a general reference to pre-root of title interests is not sufficient to preserve and prevent their extinguishment is to avoid any necessity for a search of the record back of the root of title, as well as to eliminate the uncertainties caused by such general references. Connecticut Bar Association, Connecticut

Standards of Title (1999), standard 3.10, comment one. Effectively, it requires one claiming a deeded right-of-way over the property of another to establish conclusively that at some point, some owner in the servient estate's chain of title actually made a conveyance validly creating that right-of-way. Otherwise, an invalid or non-existent right-of-way could ripen into existence over a period of time through the mere insertion into the land records of language asserting it." (Internal quotation marks omitted.) *Johnson* v. *Sourignamath*, supra, 90 Conn. App. 401.

"[T]he ultimate purpose of [the act] is to simplify land title transactions through making it possible to determine marketability by limited title searches over some reasonable period of the immediate past and thus avoid the necessity of examining the record back into distant time for each new transaction. . . . [The act is] designed to decrease the costs of title assurance by limiting the period of time that must be covered by a title search." (Citation omitted; internal quotation marks omitted.) *Il Giardino, LLC* v. *Belle Haven Land Co.*, 254 Conn. 502, 537, 757 A.2d 1103 (2000).

In the present case, the parties agree that the defendants' roots of title are two 1944 deeds that refer to a Frank Calvert right-of-way.[14] The two 1944 deeds do not provide that the property is subject to that right-of-way, do not describe the right-of-way's metes and bounds, and do not incorporate by volume and page the title transaction that created the right-of-way. The reference to the right-of-way is used only to describe the boundaries of certain tracts of land conveyed to the defendants' predecessor in title. Additionally, the deeds fail to provide any reference to a record title transaction creating the right-of-way as required by § 47-33d; indeed, Frank Calvert is not named in the 1877 deed creating the right-of-way or in any other transaction in the defendants' chain of title.[15] See *Johnson* v. *Sourignamath*, supra, 90 Conn. App. 401 (purported interests and claims must appear in chain of title of property against which interest or claim is being made).

Consequently, the court did not err in concluding that the right-of-way does not burden the defendants' property unless an exception delineated in the act applies.

II

The plaintiff claims that the court erred in finding that the act extinguished the right-of-way despite visible evidence of the right-of-way. Specifically, the plaintiff argues that the court erroneously concluded that merestones, the remnants of a fence, and the remnants of a cart path did not constitute physical evidence excepted by the nonexclusive list contained in § 47-33h. Essentially, the plaintiff argues that the statute allows

for any physical evidence of an easement. The defendants counter that the statute does not include merestones, fence posts, or car tracks, but is limited to "large industrial equipment typically used by public service companies . . . ." Although we disagree with both interpretations advanced by the parties, we conclude that the statutory exception contained in § 47-33h does not apply to preserve the right-of-way claimed by the plaintiff.

We begin by setting forth the applicable standards of review. "The interpretation of a statute, as well as its applicability to a given set of facts and circumstances, presents a question of law over which our review is plenary." *Johnson* v. *Sourignamath*, supra, 90 Conn. App. 393–94. Whether certain physical markers and conditions such as a fence, cart path, or merestones existed on the property are questions of fact to which we apply a clearly erroneous standard of review. See *Reiner, Reiner & Bendett, P.C.* v. *Cadle Co.*, 278 Conn. 92, 107, 897 A.2d 58 (2006) ("Questions of fact are subject to the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence . . . we give great deference to its findings." [Internal quotation marks omitted.]).

Section 47-33h,[16] which codifies certain exceptions to the act, provides in relevant part that the act "shall not be applied to . . . extinguish any easement or interest in the nature of an easement, or any rights granted, excepted or reserved by the instrument creating such easement or interest, including any right for future use, if (1) the existence of such easement or interest is evidenced by the location beneath, upon or above any part of the land described in such instrument of any pipe, valve, road, wire, cable, conduit, duct, sewer, track, hole, tower or *other physical facility* and whether or not the existence of such facility is observable . . . ." (Emphasis added.)

In the present case, the plaintiff argues that a cart path, fence, and merestones constitute "other physical evidence" of the easement. The court found that there were no physical signs of a "cart path" running over the contested property, and the evidence presented does not demonstrate that this conclusion was clearly erroneous. We must determine then, whether merestones and fences, as a matter of law, can be evidence of an apparent easement under § 47-33h that may have preserved the right-of-way and, specifically, whether either of these items is included as an "other physical facility."

Our state courts have not expounded on the meaning

and application of the term "other physical facility" as used in § 47-33h, and, therefore, its interpretation is an issue of first impression. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Joseph General Contracting, Inc.* v. *Couto*, 317 Conn. 565, 586, 119 A.3d 570 (2015).

Because of the ambiguity of the statutory term "other physical facility," the doctrine of ejusdem generis is useful in determining its meaning. "[T]he rule of ejusdem generis, which explains that where a particular enumeration is followed by general descriptive words, the latter will be understood as limited in their scope to . . . things of the same general kind or character as those specified in the particular enumeration." (Internal quotation marks omitted.) *Stratford* v. *Jacobelli*, 317 Conn. 863, 871–72, 120 A.3d 500 (2015). "The principle of ejusdem generis applies when '(1) the [clause] contains an enumeration by specific words; (2) the members of the enumeration suggest a specific class; (3) the class is not exhausted by the enumeration; (4) a general reference [supplements] the enumeration . . . and (5) there is [no] clearly manifested intent that the general term be given a broader meaning than the doctrine requires.' 2A J. Sutherland, Statutory Construction (5th Ed. Singer 1992) § 47.18. Thus, '[t]he doctrine of ejusdem generis calls for more than . . . an abstract exercise in semantics and formal logic. It rests on particular insights about everyday language usage. When people list a number of particulars and add a general reference like "and so forth" they mean to include by use of the general reference not everything else but only others of like kind. The problem is to determine what unmentioned particulars are sufficiently like those mentioned to be made subject to the [clause's] provisions by force of general reference.' Id." *24 Leggett Street, Ltd. Partnership* v. *Beacon Industries, Inc.*, 239 Conn. 284, 297, 685 A.2d 305 (1996).

In the present case, the doctrine of ejusdem generis limits the definition of "other physical facility" to the relationship of the preceding class of terms. The defendants argue that the class is limited to the large industrial equipment of public utilities. The list includes however "road," "track," and "hole" as physical facili-

ties that may evidence an easement. Although the facilities pipe, valve, cable, conduit, duct, sewer, and tower connote a class of public utility items, road, track, and hole are not limited to such uses. This court has applied the § 47-33h exception for roads to cases not involving uses by utility companies. See *Simonds* v. *Shaw*, 44 Conn. App. 683, 684–85, 689–90, 691 A.2d 1102 (1997) (holding § 47-33h excepted easement in roadway from prohibition of act). Additionally, § 47-33d clarifies that this portion of § 47-33h applies to apparent easements and interests in the nature of easements. Section 47-33h protects the interest of "the United States, of this state or any political subdivision thereof, of any public service company as defined in section 16-1 or of any natural gas company" apart from the enumeration herein described. Accordingly, the class enumerated in the statute cannot be limited to public utility uses.

Defining the class as "those physical objects that evidence an easement that themselves effectuate the easement itself" includes all of the items enumerated in § 47-33h, but not dissimilar items. For example, the location of a sewer beneath a property would evidence a sewer easement, whereas the location of poles and wires traversing the property would evidence an easement to a telephone company or electrical company for such use. Stated this way, the class does not include items that may be found on a property that are not set forth in § 47-33h or otherwise within the class of those items, which are only, at best, mere indirect, possible indicators of an easement.[17]

After setting forth the proper class, it is clear that merestones and fences are not a part of the class of other physical facilities creating an exemption from the application of the act. Merestones are defined as markers of a boundary, but not necessarily of an easement in the form of a right-of-way within or across a parcel of land. A fence also is not necessarily a marker of an easement in the form of a right-of-way. It is common knowledge that a fence can have many uses aside from marking a boundary of a parcel of land; for example, it can separate one interior parcel of land from another, it can restrict pets or livestock to a certain area within a parcel of land, it can surround and protect against access to a hazardous condition, or it can be purely decorative. A fence or a merestone, even if visible on part on the defendants' property, is not necessary or integral to the definition, use, existence, or identification of the plaintiff's claimed right-of-way in this case in the way that a road, sewer, or pipe would identify and carry out the purposes of an easement excepted by § 47-33h.

Moreover, although this court and the plaintiff might be able to imagine other physical evidence that could suggest the possibility, or even probability, of an easement, our legislature made its choice in creating a list

of indicators of an apparent easement to achieve its goal of "simplify[ing] land title transactions through making it possible to determine marketability by limited title searches over some reasonable period of the immediate past and thus avoid the necessity of examining the record back into distant time for each new transaction." (Internal quotation marks omitted.) *Il Giardino, LLC* v. *Belle Haven Land Co.*, supra, 254 Conn. 537. To expand the excepted list of items contained in § 47-33h to include dissimilar items, such as fences and merestones, could expose landowners to stale claims against their properties and, thus, counteract the broad remedial purposes of the act.

Accordingly, fences and merestones are not included as a matter of law within the definition of "other physical facility," and, therefore, the court did not err in concluding that the presence of a fence and merestones on the defendants' property did not except the plaintiff's claims to a right-of-way from application of the act.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] St. John's Roman Catholic Church of Montville (church) and Citizens Bank, also known as RBS Citizens, N.A. (Citizens Bank), were also defendants in this action. In accord with a stipulation, the court rendered judgment, quieting title to and confirming a right-of-way over the church's property. The church and Citizens Bank have not appealed and, therefore, all references to the defendants herein are to Stanley P. Ward, Jr., and Rose Mary Ward.

[2] In the second and third counts of its complaint, the plaintiff alleged trespass and interference with its easement rights by the defendants. Because the plaintiff has not raised these claims in its appeal, they are not before us.

[3] The trial was held before the court, *Hon. Thomas F. Parker*, judge trial referee, on June 24, 2014. The parties submitted posttrial briefs and an additional hearing was held before Judge Parker on January 14, 2015, at which the parties waived the 120 day deadline for the issuance of a decision. On April 7, 2015, the court, *Cole-Chu, J.*, transferred the case to the court, *Moukawsher, J.*, without a decision having been rendered by Judge Parker. Judge Moukawsher reviewed the transcripts, exhibits, and briefs, and held an additional hearing for arguments on June 5, 2015.

[4] " 'Root of title' means that conveyance or other title transaction in the chain of title of a person, purporting to create or containing language sufficient to transfer the interest claimed by such person, upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined. The effective date of the root of title is the date on which it is recorded . . . ." General Statutes § 47-33b (e).

[5] Although the court, *Moukawsher, J.*, stated that the parties agreed that the defendants' root of title was a 1944 deed, the parties now argue, the chain of title reveals, and Judge Parker noted, that the defendants' roots of title are two deeds from 1944 conveying undivided one-half interests from Rose Sepowitz, individually and as executor of the estate of Peter Sepowitz, to John Sepowitz. In describing the property, the deeds are identical. Whether the defendants' root of title was one deed, or two deeds that were identical except for the parties thereto, it does not affect our analysis or conclusions. For convenience, we will refer to the defendants' root of title as the two 1944 deeds. The 1944 deeds conveyed five tracts. The defendants purchased only three of those tracts in 1986 with Paul Ward, and in 1990, they purchased Paul Ward's interest in those tracts.

[6] The so-called Frank Calvert right-of-way is not defined, explained, or set forth in the 1944 deeds or any other muniment of title.

[7] "The term 'muniments of title' is defined, in relevant part, as '[t]he records of title transactions in the chain of title of a person purporting to create the interest in land claimed by such person and upon which he relies as a

basis for the marketability of his title, commencing with the root of title and including all subsequent transactions.' Black's Law Dictionary (6th Ed.1990)." *Johnson* v. *Sourignamath*, 90 Conn. App. 388, 398 n.14, 877 A.2d 891 (2005).

[8] A merestone is "[a] stone that marks land boundaries." Black's Law Dictionary (9th Ed. 2009).

[9] General Statutes § 47-31 (a) provides in relevant part: "An action may be brought by any person claiming title to, or any interest in, real or personal property, or both, against any person who may claim to own the property, or any part of it, or to have any estate in it, either in fee, for years, for life or in reversion or remainder, or to have any interest in the property, or any lien or encumbrance on it, adverse to the plaintiff, or against any person in whom the land records disclose any interest, lien, claim or title conflicting with the plaintiff's claim, title or interest, for the purpose of determining such adverse estate, interest or claim, and to clear up all doubts and disputes and to quiet and settle the title to the property. Such action may be brought whether or not the plaintiff is entitled to the immediate or exclusive possession of the property."

[10] General Statutes § 47-33c provides: "Any person having the legal capacity to own land in this state, who has an unbroken chain of title to any interest in land for forty years or more, shall be deemed to have a marketable record title to that interest, subject only to the matters stated in section 47-33d. A person has such an unbroken chain of title when the land records of the town in which the land is located disclose a conveyance or other title transaction, of record not less than forty years at the time the marketability is to be determined, which conveyance or other title transaction purports to create such interest in land, or which contains language sufficient to transfer the interest, either in (1) the person claiming that interest, or (2) some other person from whom, by one or more conveyances or other title transactions of record, the purported interest has become vested in the person claiming the interest; with nothing appearing of record, in either case, purporting to divest the claimant of the purported interest."

[11] General Statutes § 47-33b (a) provides: " 'Marketable record title' means a title of record which operates to extinguish such interests and claims, existing prior to the effective date of the root of title, as are stated in section 47-33e . . . ."

[12] General Statutes § 47-33e provides: "Subject to the matters stated in section 47-33d, such marketable record title shall be held by its owner and shall be taken by any person dealing with the land free and clear of all interests, claims or charges whatsoever, the existence of which depends upon any act, transaction, event or omission that occurred prior to the effective date of the root of title. All such interests, claims or charges, however denominated, whether legal or equitable, present or future, whether those interests, claims or charges are asserted by a person sui juris or under a disability, whether that person is within or without the state, whether that person is natural or corporate, or is private or governmental, are hereby declared to be null and void."

[13] General Statutes § 47-33d provides: "Such marketable record title is subject to: (1) All interests and defects which are created by or arise out of the muniments of which the chain of record title is formed; provided a general reference in the muniments, or any of them, to easements, use restrictions or other interests created prior to the root of title are not sufficient to preserve them, unless specific identification is made therein of a recorded title transaction which creates the easement, use restriction or other interest; (2) all interests preserved by the recording of proper notice or by possession by the same owner continuously for a period of forty years or more, in accordance with section 47-33f; (3) the rights of any person arising from a period of adverse possession or use, which was in whole or in part subsequent to the effective date of the root of title; (4) any interest arising out of a title transaction which has been recorded subsequent to the effective date of the root of title from which the unbroken chain of title of record is started; provided such recording shall not revive or give validity to any interest which has been extinguished prior to the time of the recording by the operation of section 47-33e; (5) the exceptions stated in section 47-33h as to rights of reversioners in leases, as to apparent easements and interests in the nature of easements, and as to interests of the United States, this state and political subdivisions thereof, public service companies and natural gas companies."

[14] See footnote 5 of this opinion.

[15] We have also reviewed the 1986 and 1990 deeds conveying the defen-

dants' property to them and Paul Ward. The defendants first purchased their property with Paul Ward as tenants in common from John Sepowitz as set forth in a deed recorded on the Montville town records on June 30, 1986. Paul Ward then conveyed his interest in the property to the defendants by a quitclaim deed recorded on May 24, 1990. The 1986 and 1990 deeds each contain a reference to the "Plan of the Sepowitz Property Jerome Road, Montville, Connecticut Date July, 1982 Scale: 1" = 50'," which was recorded on the Montville town records. That plan, however, does not depict any alleged right-of-way for the benefit of the plaintiff's property.

[16] General Statutes § 47-33h provides: "Sections 47-33b to 47-33l, inclusive, shall not be applied to bar any lessor or successor of the lessor as a reversioner of the right to possession on the expiration of any lease or to bar or extinguish any easement or interest in the nature of an easement, or any rights granted, excepted or reserved by the instrument creating such easement or interest, including any right for future use, if (1) the existence of such easement or interest is evidenced by the location beneath, upon or above any part of the land described in such instrument of any pipe, valve, road, wire, cable, conduit, duct, sewer, track, hole, tower or *other physical facility* and whether or not the existence of such facility is observable, or to bar, extinguish or otherwise affect any interest of the United States, of this state or any political subdivision thereof, of any public service company as defined in section 16-1 or of any natural gas company, or (2) such easement or interest is a conservation restriction, as defined in section 47-42a, that is held by a land trust or nonprofit organization." (Emphasis added.)

[17] Thus, by way of example, fences, merestones, trees, and shrubs, standing alone, in the absence of specific evidence of a road or track running between them, do not satisfy the requirements for a § 47-33h exception.

--------