## Appendix

## JANET A. IRVING *v.* FIREHOUSE ASSOCIATES, LLC
### (AC 26074)

Bishop, McLachlan and Berdon, Js.

Argued January 5—officially released June 6, 2006

*Thomas E. Crosby*, for the appellant (defendant).

*Gerald L. Garlick*, with whom was *Charles J. Irving*, for the appellee (plaintiff).

*Opinion*

McLACHLAN, J. The defendant, Firehouse Associates, LLC, appeals from the trial court's judgment rendered in accordance with a report by an attorney trial referee (referee) in a dispute with the plaintiff, Janet A. Irving, over a claimed right-of-way. The defendant claims that the court (1) lacked personal jurisdiction over the parties pursuant to General Statutes § 51-183b,

(2) improperly concluded that the claimed right-of-way was not extinguished by the provisions of the Marketable Title Act, General Statutes § 47-33b et seq., (3) improperly concluded that the claimed right-of-way was an appurtenant easement rather than a personal easement and (4) improperly concluded that the unity of title doctrine was not applicable under the circumstances of this case. We disagree and affirm the judgment of the trial court.

The parties to this action are the owners of adjacent parcels of real estate located in Essex. In June, 2001, a dispute arose as to a right-of-way claimed by the plaintiff over the defendant's land after the defendant erected a masonry retaining wall and parking pad that allegedly altered the contour of the land and interfered with the use of the right-of-way.

In a six count amended complaint, the plaintiff alleged that the defendant's property was subject to a right-of-way in favor of her parcel pursuant to two separate deeds (first and second counts), that there existed easements by necessity (fourth count) and implication (fifth count) and that the defendant maliciously obstructed her right-of-way (sixth count).[1] The plaintiff sought a permanent injunction prohibiting the defendant from obstructing her right-of-way and requested damages. The defendant filed an answer with eight special defenses[2] and a two count counterclaim,

---

[1] The plaintiff withdrew the third count of adverse possession at trial.

[2] By way of special defenses, the defendant claimed that (1) the unity of title doctrine barred the plaintiff's claim of a right-of-way or an easement, (2) General Statutes § 47-37 and the applicable statute of limitations barred the plaintiff's claim of an easement by prescription, (3) the easement, if one existed, was personal to a particular predecessor in title and did not run with the land, (4) the plaintiff or her predecessors in interest abandoned any claim to a right-of-way or an easement, (5) the plaintiff's claimed easement or right-of-way was void and unenforceable because it was ambiguous as to length, width and purpose, (6) any claimed easement or right-of-way was limited to the reasonable uses that could have been made of it at the time it was created, (7) the plaintiff's claim as to an easement by implication or necessity was void and unenforceable because the plaintiff could access

seeking to quiet title in the first count and claiming tortious interference with the defendant's contractual rights to lease its property in the second count.

The court referred the matter to an attorney trial referee, who, after conducting a two day hearing, filed a report and submitted a memorandum of decision on September 30, 2002. In his report, the referee found that the defendant's property was subject to a right-of-way in favor of the plaintiff and that an injunction should be issued requiring the defendant to dismantle the masonry retaining wall. The referee found, however, that the plaintiff was not entitled to damages. Specifically, the referee found in favor of the plaintiff as to the first and second counts of her complaint, and in favor of the defendant as to the fourth, fifth and sixth counts. With respect to the defendant's counterclaim, the referee found that the defendant was entitled to judgment quieting and settling title to the property of the parties as to the right-of-way and found in favor of the plaintiff on the tortious interference claim.

The defendant filed preliminary objections to the referee's report. At that time, the defendant also filed a motion for an extension of time to file the transcript of the hearing before the referee and any further objections. The defendant filed additional objections and exceptions to the referee's report after the delivery of the transcript. The plaintiff filed a response, and a hearing was held before the court on July 13, 2004. On November 18, 2004, 128 days later, the court issued its memorandum of decision, overruling the defendant's objections to the acceptance of the referee's report and rendering judgment in accordance with that report. This appeal followed.

her property by other means and (8) the plaintiff was not entitled to attorney's fees or punitive damages because she failed to state a claim on which such relief could be awarded.

I

The defendant claims that the court lacked personal jurisdiction over the parties to render its judgment in accordance with the referee's report because the court's decision was not issued within 120 days of the completion of the trial in violation of § 51-183b. We address that claim first because it presents a jurisdictional issue. See *Levine* v. *Levine*, 88 Conn. App. 795, 798, 871 A.2d 1034 (2005).

Section 51-183b provides: "Any judge of the Superior Court and any judge trial referee who has the power to render judgment, *who has commenced the trial of any civil cause*, shall have power to continue such trial and shall render judgment not later than one hundred and twenty days from the completion date of the trial of such civil cause. The parties may waive the provisions of this section." (Emphasis added.) Here, the case was referred to and tried before an attorney trial referee pursuant to Practice Book § 19-2A et seq. The court did not try the case; the attorney trial referee tried the case. The court held a hearing on the defendant's objections to the report and then rendered judgment. The provisions of § 51-183b do not apply under those circumstances.

The procedures that govern matters heard by attorney trial referees are set forth in chapter nineteen of our rules of practice. Upon the consent of the appearing parties or their counsel, a civil nonjury case may be referred to an attorney trial referee by the court. Practice Book § 19-2A. An attorney trial referee must file a report with the clerk of the court "within one hundred and twenty days of the *completion of the trial before such referee*." (Emphasis added.) Practice Book § 19-4. "When any case shall be referred, *no trial will be had by the court unless the reference be revoked upon stipulation of the parties or order of the court*. . . ."

(Emphasis added.) Practice Book § 19-6 (a). Twenty-one days after the referee's report is mailed to the parties or their counsel, "either party may, without written motion, *claim the case for the short calendar for judgment on the report* . . . . The court may, on its own motion and with notice thereof, *schedule the matter for judgment on the report and/or hearing on any objections thereto*, anytime after the expiration of twenty-one days from the mailing of the report to the parties or their counsel by the clerk." (Emphasis added.) Practice Book § 19-16. "The court shall render such judgment as the law requires upon the facts in the report. If the court finds that the committee or attorney trial referee has materially erred in its rulings or that there are other sufficient reasons why the report should not be accepted, the *court shall reject the report and refer the matter to the same or another committee or attorney trial referee, as the case may be, for a new trial* or revoke the reference and leave the case to be disposed of in court." (Emphasis added.) Practice Book § 19-17 (a).

The referee files a report, stating the facts found and the conclusions drawn therefrom, after a trial to the referee. The court holds a hearing, after the case is claimed to the short calendar by either party or after scheduling the matter on its own, to hear objections to the report, if any, and to render judgment on the report or to reject the report and refer the matter for a new trial if the court finds error. Clearly, the hearing before the court was a short calendar proceeding. For this reason, the provisions of Practice Book § 11-19 rather than the provisions of General Statutes § 51-183b apply in determining whether the court's decision was timely issued.

Section 11-19 provides: "(a) Any judge of the superior court and any judge trial referee to whom a short calendar matter has been submitted for decision, with or

without oral argument, shall issue a decision on such matter not later than 120 days from the date of such submission, unless such time limit is waived by the parties. In the event that the judge or referee conducts a hearing on the matter and/or the parties file briefs concerning it, the date of submission for purposes of this section shall be the date the matter is heard or the date the last brief ordered by the court is filed, whichever occurs later. If a decision is not rendered within this period the matter may be claimed in accordance with subsection (b) for assignment to another judge or referee.

"(b) A party seeking to invoke the provisions of this section shall not later than fourteen days after the expiration of the 120 day period file with the clerk a motion for reassignment of the undecided short calendar matter which shall set forth the date of submission of the short calendar matter, the name of the judge or referee to whom it was submitted, that a timely decision on the matter has not been rendered, and whether or not oral argument is requested or testimony is required. The failure of a party to file a timely motion for reassignment shall be deemed a waiver by that party of the 120 day time."

The defendant did not file a motion for reassignment at any time after the expiration of the 120 day period. In its reply brief, the defendant argues that even if Practice Book § 11-19 (b) applies, the court's decision was filed eight days after it was due and that that provision of the rules of practice allows fourteen days for the filing of a motion for reassignment. The defendant claims that it had six additional days from the time of the issuance of the decision to file such a motion and that the failure to do so cannot be deemed a waiver under that section.

The fact remains that the defendant did not file a motion for reassignment at any time after the due date

of the decision, not before or after the issuance of the court's memorandum of decision on November 18, 2004.[3] The failure to do so clearly constitutes a waiver under the plain language of Practice Book § 11-19 (b). Accordingly, the defendant's jurisdictional claim must fail.

## II

The defendant next claims that the court improperly concluded that the plaintiff's right-of-way was not extinguished by the Marketable Title Act (act).[4] See General Statutes § 47-33b et seq.[5] Specifically, the defendant

[3] Because the defendant did not file a motion for reassignment at any time within the period provided by Practice Book § 11-19 (b), we do not reach the issue of whether the issuance of a decision by the court ends a party's time to seek reassignment.

[4] The plaintiff claims that this issue was not raised before the referee and, therefore, cannot be considered by this court. Although the defendant's posttrial memorandum of law only briefly mentions the effect of the act on the plaintiff's claimed right-of-way, the issue clearly was before the court and was addressed in its memorandum of decision. Accordingly, we treat the issue as having been preserved at trial.

[5] General Statutes § 47-33b provides in relevant part: "(a) 'Marketable record title' means a title of record which operates to extinguish such interests and claims, existing prior to the effective date of the root of title, as are stated in section 47-33e . . . .

"(e) 'Root of title' means that conveyance or other title transaction in the chain of title of a person, purporting to create or containing language sufficient to transfer the interest claimed by such person, upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined. The effective date of the root of title is the date on which it is recorded . . . ."

General Statutes § 47-33c provides: "Any person having the legal capacity to own land in this state, who has an unbroken chain of title to any interest in land for forty years or more, shall be deemed to have a marketable record title to that interest, subject only to the matters stated in section 47-33d. A person has such an unbroken chain of title when the land records of the town in which the land is located disclose a conveyance or other title transaction, of record not less than forty years at the time the marketability is to be determined, which conveyance or other title transaction purports to create such interest in land, or which contains language sufficient to transfer the interest, either in (1) the person claiming that interest, or (2) some other person from whom, by one or more conveyances or other title

claims that the plaintiff's root of title and the defendant's root of title do not contain references to volume and page numbers in the land records establishing the disputed right-of-way. The failure to reference specific volume and page numbers in those deeds, argues the defendant, extinguished the plaintiff's claimed right-of-way. General Statutes §§ 47-33c and 47-33e. We disagree.

In his report, the referee found that the defendant's parcel is subject to a right-of-way in favor of lot 25A, the plaintiff's property, as referred to in a 1932 deed. That deed contains the language: "The condition being that a right of way shall be left open to the property of Alfred W. Keiss in the rear." The referee found that even though Keiss no longer owned lot 25A at the time of the 1932 conveyance, the right-of-way language nevertheless referred to lot 25A. The referee further found that the defendant's property is subject to a right-of-way referred to in a deed dated 1897, which contains

---

transactions of record, the purported interest has become vested in the person claiming the interest; with nothing appearing of record, in either case, purporting to divest the claimant of the purported interest."

General Statutes § 47-33d provides in relevant part: "Such marketable record title is subject to: (1) All interests and defects which are created by or arise out of the muniments of which the chain of record title is formed; provided a general reference in the muniments, or any of them, to easements, use restrictions or other interests created prior to the root of title are not sufficient to preserve them, unless specific identification is made therein of a recorded title transaction which creates the easement, use restriction or other interest . . . ."

General Statutes § 47-33e provides: "Subject to the matters stated in section 47-33d, such marketable record title shall be held by its owner and shall be taken by any person dealing with the land free and clear of all interests, claims or charges whatsoever, the existence of which depends upon any act, transaction, event or omission that occurred prior to the effective date of the root of title. All such interests, claims or charges, however denominated, whether legal or equitable, present or future, whether those interests, claims or charges are asserted by a person sui juris or under a disability, whether that person is within or without the state, whether that person is natural or corporate, or is private or governmental, are hereby declared to be null and void."

the language: "[T]he condition being that a right of way shall be left open to the property of William P. Gladwin in the rear."[6] The referee concluded that the plaintiff had a record easement over the defendant's property and, therefore, did not have an easement by necessity or by implication.

In reviewing a challenge to the report of the referee and the court's acceptance of that report, it is necessary to first note our standard of review. "While the reports of [attorney trial referees] are essentially of an advisory nature, it has not been the practice to disturb their findings when they are properly based upon evidence, in the absence of errors of law, and the parties have no right to demand that the court shall redetermine the fact[s] thus found. . . .

"A reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. . . . This court has articulated that attorney trial referees and factfinders share the same function . . . whose determination of the facts is reviewable in accordance with well established procedures prior to the rendition of judgment by the court. . . .

"[W]e note that, because the attorney trial referee does not have the powers of a court and is simply a fact finder, [a]ny legal conclusions reached by an attorney trial referee have no conclusive effect. . . . The reviewing court is the effective arbiter of the law and the legal opinions of [an attorney trial referee], like those of the parties, though they may be helpful, carry

---

[6] The right-of-way claimed by the plaintiff in the first count of the complaint, referenced in the 1932 deed, is the same right-of-way claimed by the plaintiff in the second count of the complaint, referenced in the 1897 deed.

no weight not justified by their soundness as viewed by the court that renders judgment. . . . Where legal conclusions are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts found by the . . . referee." (Citations omitted; internal quotation marks omitted.) *Alliance Partners, Inc.* v. *Oxford Health Plans, Inc.*, 263 Conn. 191, 201–202, 819 A.2d 227 (2003). In interpreting the act, as well as its applicability to the particular facts and circumstances of this case, we exercise plenary review. *Johnson* v. *Sourignamath*, 90 Conn. App. 388, 393–94, 877 A.2d 891 (2005).

"Pursuant to the act, any person who has an unbroken record chain of title to an interest in land for a period of forty years, plus any additional period of time necessary to trace the title back to the latest connecting title instrument of earlier record (which is the root of title under the act) has a marketable record title subject only to those pre-root of title matters that are excepted under the statute or are caused to reappear in the latest forty year record chain of title. . . . The act declares null and void any interest in real property not specifically described in the deed to the property which it purports to affect, unless within a forty year period, a notice specifically reciting the claimed interest is placed on the land records in the affected land's chain of title." (Internal quotation marks omitted.) Id., 394–95.

The plaintiff acquired title to lot 25A by warranty deed recorded on October 1, 1995. The legal description indicates that the property is conveyed "[t]ogether with a right of way over land now or formerly of The Essex Fire Engine Company #1, extending from said premises in a westerly direction to Prospect Street, as reserved in a deed from The First Baptist Church to The Town of Essex dated December 3, 1897 and recorded in Volume 9 at Page 350 of the Essex Land Records." The parties agree that the plaintiff's root of title is a 1961

warranty deed, which conveys the subject property "[t]ogether with . . . all such right, title and interest as the grantor has in a certain right of way over land of said The Essex Fire Engine Company No. 1 extending from the premises herein conveyed in a westerly direction to Prospect Street." All of the intermediary deeds, except for the one prior to the transfer to the plaintiff, contain the same or similar right-of-way language as the root of title. The deed to the plaintiff's immediate predecessor in title contains the same right-of-way language as the plaintiff's deed, referencing the volume and page number of the establishment of the easement.

Because the plaintiff's root of title fails to reference that volume and page number, the defendant claims that the act extinguishes the plaintiff's claimed right-of-way. The defendant's argument fails for two reasons. First, the act does not require that the root of title contain a specific reference to the establishment of the easement. It is sufficient if any of the deeds within the forty year period contain such a reference in the relevant chain of title or if a notice specifically reciting the claimed interest is recorded in the land records in the affected land's chain of title within that forty year period. "A Marketable Record Title is subject to any interest or defect arising out of any title transaction which has been recorded in the record chain of title of the subject property subsequent to the date of the recording of the root of title; provided however, the recording of such a transaction cannot revive or give validity to any pre-root of title defect or interest which has been extinguished by the provisions of § 47-33e." Connecticut Bar Association, Connecticut Standards of Title (1999), standard 3.9.

Second, and more significant, is the fact that the act operates to extinguish interests that burden a *servient* estate if those interests are not properly preserved in the forty year period. In this case, the defendant's property

would be the servient estate, purportedly affected by the interest of the plaintiff's claimed right-of-way. The plaintiff's property, benefited by the deeded easement, would be the dominant estate. "The act declares null and void any interest in real property *not specifically described in the deed to the property which it purports to affect* . . . ." (Emphasis added; internal quotation marks omitted.) *Johnson* v. *Sourignamath,* supra, 90 Conn. App. 395. "The Marketable Record Title Act . . . is comprehensive in its approach to eliminating ancient and stale title claims and defects." Connecticut Bar Association, Connecticut Standards of Title, supra, comment 3.1. The act does not extinguish benefits appurtenant to the dominant estate; it extinguishes burdens appurtenant to the servient estate. See *McBurney* v. *Cirillo,* 276 Conn. 782, 889 A.2d 759 (2006).

The defendant also claims that the disputed right-of-way was extinguished by the act because the root of title in the defendant's chain of title did not specifically reference a volume and page number in the land records for the establishment of that easement. The defendant acquired title to its property by warranty deed recorded on October 26, 2000. The parcel is conveyed "together with and subject to such rights, restrictions, easements and covenants as of record may appear." The two deeds prior to that conveyance, warranty deeds recorded on March 19, 1999, contain the same general language as to encumbrances. The next deed in the defendant's chain of title, the root of title, is a warranty deed recorded on August 17, 1932, which contains the language: "The condition being that a right of way shall be left open to the property of Albert W. Keiss in the rear." The 1897 deed referred to in the referee's report is a deed in the defendant's chain of title recorded prior to the 1932 deed. That deed contains the language: "[T]he condition being that a right of way shall be left open to the property of William P. Gladwin in the rear."

The defendant's root of title contains the entire description of the easement. There was no need to reference a volume and page number of the land records under those circumstances. The 1897 deed, also containing a reference to the easement, indicated that the defendant's property was subject to a right-of-way that was to be left open to property of Gladwin in the rear. The testimony at trial indicated that the plaintiff's property, lot 25A, is located to the rear of the defendant's property, and that Gladwin was the owner of lot 25A at the time of the 1897 deed. The next deed in the defendant's chain of title, the root of title, is the 1932 deed with the language that the right-of-way was to be left open to the property of Keiss in the rear. The evidence at trial indicated that Keiss took title to lot 25A subsequent to Gladwin. Although he no longer owned lot 25A at the time of the 1932 conveyance, the referee found that the original intent of the parties was to maintain the easement in favor of lot 25A. The court agreed with this finding.[7]

We conclude that the facts as found by the referee support the judgment of the court. The court properly overruled the defendant's objections to the acceptance of the referee's report, concluding that the act did not render the easement in favor of plaintiff's lot 25A unenforceable.

## III

The defendant claims that the court improperly concluded that the plaintiff's right-of-way, as described in the 1897 and 1932 deeds, was an appurtenant easement rather than a personal easement. Specifically, the defen-

---

[7] Although Keiss owned other property in 1932, the defendant admitted that a right-of-way over the defendant's property could not possibly reach the property owned by Keiss in 1932. Because Keiss formerly owned lot 25A, it was found that Keiss was mistakenly identified as the property owner at the time of the 1932 conveyance. The deed should have indicated that the right-of-way was to be left open to property *now or formerly* of Keiss.

dant argues that the absence of the language "heirs, successors and assigns," following the stated condition that the right-of-way was to be left open to the properties of Gladwin or Keiss in the rear, evidenced the intent of the grantor that the easement did not run with the land and was personal to Gladwin and Keiss.

"[T]he determination of the intent behind language in a deed, considered in the light of all the surrounding circumstances, presents a question of law on which our scope of review is plenary." (Internal quotation marks omitted.) *Mulla* v. *Maguire*, 65 Conn. App. 525, 531, 783 A.2d 93, cert. denied, 258 Conn. 934, 785 A.2d 229 (2001). "In construing a deed, a court must consider the language and terms of the instrument as a whole. . . . Our basic rule of construction is that recognition will be given to the expressed intention of the parties to a deed or other conveyance, and that it shall, if possible, be so construed as to effectuate the intent of the parties. . . . In arriving at the intent expressed . . . in the language used, however, it is always admissible to consider the situation of the parties and the circumstances connected with the transaction, and every part of the writing should be considered with the help of that evidence." (Internal quotation marks omitted.) *Il Giardino, LLC* v. *Belle Haven Land Co.*, 254 Conn. 502, 510–11, 757 A.2d 1103 (2000).

"Easements are classified as either easements appurtenant or easements in gross. . . . Two distinct estates are involved in an easement appurtenant: the dominant to which the easement belongs and the servient upon which the obligation rests. . . . An easement appurtenant must be of benefit to the dominant estate but the servient estate need not be adjacent to the dominant estate. . . . An easement in gross is one which does not benefit the possessor of any tract of land in his use of it as such possessor. . . . An easement in gross belongs to the owner of it independently of his owner-

ship or possession of any specific land. Therefore, in contrast to an easement appurtenant, its ownership may be described as being personal to the owner of it." (Citations omitted; internal quotation marks omitted.) Id., 512.

"The general rule is that an easement may be construed as personal only when the deed language fails to contain the words 'heirs, successors and/or assigns.' " *Mandes* v. *Godiksen*, 57 Conn. App. 79, 82 n.6, 747 A.2d 47, cert. denied, 253 Conn. 915, 754 A.2d 164 (2000). The absence of words of inheritance may create a presumption that the easement was intended to be personal, but the force of that presumption is negated if the easement serves to enhance the value of the dominant estate, and it appears from all the surrounding circumstances that the parties intended to create a permanent easement. *Dunn Bros., Inc.* v. *Lesnewsky*, 164 Conn. 331, 335, 321 A.2d 453 (1973). "If an easement is in its nature an appropriate and useful adjunct to the land conveyed, having in view the intention of the parties as to its use, and there is nothing to show that the parties intended it to be a mere personal right, it should be held to be an easement appurtenant and not an easement in gross." *Lichteig* v. *Churinetz*, 9 Conn. App. 406, 411, 519 A.2d 99 (1986).

In the present case, the property benefited by the easement, plaintiff's lot 25A, is located to the rear of the defendant's property, the property burdened by the easement. Lot 25A is landlocked unless the plaintiff has the claimed right-of-way over the defendant's property. Even though the language in the deed establishing the right-of-way does not contain words of inheritance, the right-of-way provides access to lot 25A and unquestionably enhances the value of that property. The right-of-way, as described in the 1897 and 1932 deeds in the defendant's chain of title, was to be left open to the *properties* of Gladwin and Keiss. Nothing in the evi-

dence suggested that the parties intended the easement to be a mere personal right. Under those circumstances, we conclude that the court was correct in determining that the plaintiff's easement is an appurtenant easement that attaches to lot 25A.

IV

The defendant's final claim is that the disputed easement was never validly created because there was no unity of title between the dominant estate and the servient estate. Although the defendant concedes in its brief that "a legitimate argument can be made that the unity of title doctrine has been abandoned," it argues that the application of *Bolan* v. *Avalon Farms Property Owners Assn., Inc.*, 250 Conn. 135, 735 A.2d 798 (1999) (en banc), is limited to situations involving the creation of easements of necessity. We disagree.

Our Supreme Court in *Bolan* held that "the unity of title doctrine should be abandoned and that the intent of the deed creating an easement should be effectuated even if no unity of title exists between the servient estate and the dominant estate the easement is intended to serve." Id., 144–45. Moreover, in *Mandes* v. *Godiksen*, supra, 57 Conn. App. 82 n.6, we noted that *Bolan* abandoned the unity of title doctrine in cases involving easements in general and held that *Bolan* was to be applied retroactively. The court correctly concluded that *Bolan* abolished the unity of title doctrine in its entirety.

The judgment is affirmed.

In this opinion the other judges concurred.