JO-ANN JACKSON *v.* PASCALE P. LEE*

Superior Court, Judicial District of Stamford-Norwalk
File No. FST-CV-06-5002699 S

* Affirmed. *Jackson* v. *Lee*, 121 Conn. App. 375, 996 A.2d 302 (2010).

Memorandum filed May 19, 2009

*Stephen J. Conover*, for the plaintiff.

*Matthew B. Woods*, for the named defendant.

*Jonathan S. Bowman* and *Ari J. Hoffman*, for the defendant Wachovia Mortgage Corporation.

MINTZ, J. The plaintiff, Jo-Ann Jackson, commenced this action to quiet title against the defendant Pascale P. Lee by summons and complaint dated October 30, 2006. Lee filed an answer and special defenses to the first count. On September 20, 2007, the plaintiff filed her reply, thereby closing the pleadings. On November 12, 2008, Wachovia Mortgage Corporation (Wachovia), holder of two mortgages on Lee's property, filed a

motion to be added as a defendant. The court, *Mintz, J.*, granted the motion on November 19, 2008. On that date, the plaintiff filed an amended complaint, adding allegations to the first count as to Wachovia's mortgage interests in Lee's property, and Wachovia filed an answer, thereby closing the pleadings once again.

The plaintiff, by virtue of an executor's deed (plaintiff's deed) dated January 21, 1969, and recorded in volume 710 at page 193 of the Norwalk land records (land records), is the record owner of property known as 28 Amundsen Street, Norwalk.[1] The plaintiff's property consists of two adjacent lots. The first parcel contains a house with frontage on Amundsen Street, and the second parcel (southern lot) is without a structure. Lee, by virtue of a deed dated November 6, 2003, and recorded in volume 5189 at page 126 of the land records, is the record owner of adjoining property known as 22 Cavray Road, Norwalk (defendant's property). Lee's property is located south of Amundsen Street and shares two boundaries with the plaintiff's southern lot.

In her amended complaint, the plaintiff alleges the following facts. The plaintiff's southern lot is landlocked with access to Amundsen Street through a right-of-way over Lee's property. By virtue of the plaintiff's deed, the plaintiff enjoys certain appurtenant easement rights in and to Lee's property. Further, as owner of 28 Amundsen Street, the plaintiff enjoys certain implied appurtenant easement rights created by operation of law and rising out of the circumstances surrounding the conveyance of Lee's property by deed dated January 21, 1969. Additionally, the plaintiff enjoys certain prescriptive easement rights in and to Lee's property by virtue of the plaintiff's having made open, visible and adverse use of the easement-right-of-way, under a claim

---

[1] On January 14, 1975, Dennis Geronimo conveyed to the plaintiff by quitclaim deed any and all interest he had in 28 Amundsen Street.

of right for an uninterrupted period in excess of fifteen years as required by General Statutes § 47-37.

## I

## MARKETABLE TITLE ACT, GENERAL STATUTES § 47-33B ET SEQ.

In count one, the plaintiff claims an easement or right-of-way across Lee's property in order to access Amundsen Street. The plaintiff claims that this easement or right-of-way exists by virtue of her deed and, alternatively, by implication or necessity, and by prescription, over a strip of land directly east of the plaintiff's southern lot and directly south of Amundsen Street. The plaintiff maintains that the deed that conveyed the property on Amundsen Street is clear and unambiguous and conveys an easement over the right-of-way area in dispute. The deed states: "Together with a Right of Way for all purposes from said lot to said Amundsen Street over a strip of land of uniform width of forty feet."

In response, Lee maintains that any claimed easement is void under the Marketable Title Act, General Statutes § 47-33b et seq. The Marketable Title Act "declares null and void any interest in real property not specifically described in the deed to the property which it purports to affect, unless within a forty year period, a notice specifically reciting the claimed interest is placed on the land records in the affected land's chain of title." (Internal quotation marks omitted.) *Irving* v. *Firehouse Associates, LLC*, 95 Conn. App. 713, 724, 898 A.2d 270, cert. denied, 280 Conn. 903, 907 A.2d 90 (2006). Thus, a person with marketable record title takes the land "free and clear of all interests, claims or charges whatsoever, the existence of which depends upon any act, transaction, event or omission that occurred prior to the effective date of the root of title. . . ." General Statutes § 47-33e.

"[T]he ultimate purpose of all Marketable Title Acts is to simplify land title transactions through making it possible to determine marketability by limited title searches over some reasonable period of the immediate past and thus avoid the necessity of examining the record back into distant time for each new transaction." (Internal quotation marks omitted.) *Mizla* v. *Depalo*, 183 Conn. 59, 64 n.9, 438 A.2d 820 (1981). "[T]he act does not require that the root of title contain a specific reference to the establishment of the easement. It is sufficient if any of the deeds within the forty year period contain such a reference in the relevant chain of title or if a notice specifically reciting the claimed interest is recorded in the land records in the affected land's chain of title within that forty year period. A Marketable Record Title is subject to any interest or defect arising out of any title transaction which has been recorded in the record chain of title of the subject property subsequent to the date of the recording of the root of title; provided however, the recording of such a transaction cannot revive or give validity to any pre-root of title defect or interest which has been extinguished by the provisions of § 47-33e. . . . Second, and more significant, is the fact that the act operates to extinguish interests that burden a servient estate if those interests are not properly preserved in the forty year period." (Citation omitted; internal quotation marks omitted.) *Irving* v. *Firehouse Associates, LLC*, supra, 95 Conn. App. 725–26. Although the root of title need not contain a specific reference to the establishment of the easement, General Statutes § 47-33d (1) provides that marketable record title is not subject to easements recited in conveyances which are only mentioned by "a general reference . . . unless specific identification is made therein of a recorded title transaction which creates the easement . . . ."

"The reason that a general reference to pre-root of title interests is not sufficient to preserve and prevent

their extinguishment is to avoid any necessity for a search of the record back of the root of title, as well as to eliminate the uncertainties caused by such general references. Connecticut Bar Association, Connecticut Standards of Title (1999), standard 3.10, comment one. Effectively, it requires one claiming a deeded right-of-way over the property of another to establish conclusively that at some point, some owner in the servient estate's chain of title actually made a conveyance validly creating that right-of-way. Otherwise, an invalid or non-existent right-of-way could ripen into existence over a period of time through the mere insertion into the land records of language asserting it." (Internal quotation marks omitted.) *Johnson* v. *Sourignamath*, 90 Conn. App. 388, 401, 877 A.2d 891 (2005).

In order to establish marketable record title, a person with legal capacity of owning land in Connecticut must be able to show an unbroken chain of title to an interest in the land for forty years or more. General Statutes § 47-33c. As the Marketable Title Act "operates to extinguish interests that burden a servient estate"; *Irving* v. *Firehouse Associates, LLC*, supra, 95 Conn. App. 725; the court must focus on the chain of title of the servient estate. See id. Because Lee's property is the alleged servient estate, the court must examine the chain of title to Lee's property back to its "root of title."[2]

Lee, by virtue of a warranty deed dated November 6, 2003, and recorded in volume 5189 at page 126 of the land records, acquired title to 22 Cavray Road from Allen Strand and Virginia Strand. The alleged reference to the right-of-way in Lee's deed reads: "Right, title and

---

[2] General Statutes § 47-33b (e) defines "root of title" as "that conveyance or other title transaction in the chain of title of a person, purporting to create or containing language sufficient to transfer the interest claimed by such person, upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined. . . ."

interest of others *if any*, in and to any portion of the premises lying within *the former* right of way of Amundsen Street." (Emphasis added.) By virtue of a warranty deed dated May 16, 1994, and recorded in volume 2943 at page 130 of the land records, Lee's grantors, Allen Strand and Virginia Strand, acquired title to the servient estate from Mary A. Fullam. The Strand deed contains the same language found in Lee's deed regarding the interest of others in the subject right-of-way.

Prior to Fullam's conveyance to the Strands on May 16, 1994, she acquired a half-interest in the property by quitclaim deed from Joseph Fullam dated October 30, 1978, and recorded in the volume 1179 at page 38 of the land records. Because the conveyance was by virtue of a quitclaim deed, there is no reference to the possible rights of others. Originally, Joseph Fullam and Mary A. Fullam acquired the property by virtue of a warranty deed from Harold Skidd and Helen Skidd, dated September 10, 1972, and recorded in volume 824 at page 168 of the land records. The warranty deed conveying the property to the Fullams does not contain the general reference to the "interests of others, if any" found in the subsequent conveyances, nor does it contain any reference to the possible interests of the others in the property.[3]

The Skidds acquired their interest in the property by virtue of two warranty deeds. The Skidds acquired lot 17 and the rectangular property in dispute as shown on map 717 and map 773, from Jennette Raymond by deed dated October 13, 1948, and recorded in volume 338 at page 434 of the land records. By deed dated July 27, 1948, and recorded in volume 333 at page 390 of the land records, the Skidds acquired lot 16 from Agnes

---

[3] Rather, the deed conveying the property from the Skidds to the Fullams references the property's western boundary as "62 feet, more or less, by land now or formerly of Catherine Lawler."

Cavanagh. The description of the westerly boundary contained in the deed conveying lot 17 references similar language found in the deed conveying the property from the Skidds to the Fullams. The westerly boundary is described as being "in part by a strip of land said to belong to Catherine M. Lawler, but also said to be a right of way."

The plaintiff maintains that the aforementioned chain of title clearly references "the rights, title and interests of others, if any, in and to any portion of the premises lying within the former right of way of Amundsen Street." According to the plaintiff, this reference is sufficient to place a reasonable title searcher on notice of the existence of the easement and impose on the title searcher the obligation to determine whether the property is encumbered in any way.

It is clear, however, that Lee's root of title, and the subsequent chain of title, fail to sufficiently reference the plaintiff's claimed easement or right-of-way. The reference to "the rights, title and interests of others, if any, in and to any portion of the premises lying within the former right of way of Amundsen Street," which is not even carried through the chain of title, is vague and lacks any indication as to its origin. This language, therefore, is not sufficiently definite to satisfy the requirements of the Marketable Title Act. As previously noted, "[t]he reason that a general reference to pre-root of title interests is not sufficient to preserve and prevent their extinguishment is to avoid any necessity for a search of the record back of the root of title, as well as to eliminate the uncertainties caused by such general references"; (internal quotation marks omitted) *Johnson* v. *Sourignamath,* supra, 90 Conn. App. 401; and to allow for such a vague reference as the one in the present case would violate the aforementioned policy.

Therefore, in accordance with the clear mandate of the Marketable Title Act, the court finds that the vague

and general reference to a "right of way" found in Lee's chain of title is insufficient to place a reasonable title searcher on notice of the existence of an easement and, thus, insufficient to impose on the title searcher the obligation to determine whether the property is encumbered in any way. Accordingly, the court finds that, under the Marketable Title Act, any purported interest in the right-of-way is declared null and void and renders judgment in favor of Lee.

## II

## EASEMENT BY NECESSITY OR IMPLICATION

The court notes that "although there exists a similarity between an easement by necessity and an easement by implication . . . these easements are not identical: The difference between the two types of easements is that an easement by necessity requires the party's parcel to be landlocked, and an easement by implication does not require that the parcel be landlocked." (Citation omitted; internal quotation marks omitted.) *Sanders* v. *Dias,* 108 Conn. App. 283, 289, 947 A.2d 1026 (2008).

## III

## EASEMENT BY NECESSITY

"The requirements for an easement by necessity are rooted in our common law. . . . [A]n easement by necessity will be imposed where a conveyance by the grantor leaves the grantee with a parcel inaccessible save over the lands of the grantor, or where the grantor retains an adjoining parcel which he can reach only through the lands conveyed to the grantee. . . . [T]o fulfill the element of necessity, the law may be satisfied with less than the absolute need of the party claiming the right of way. The necessity element need only be a reasonable one. . . . Although the requirements for an easement by necessity once included a showing of

unity of ownership . . . our Supreme Court has eliminated that requirement. . . . Moreover, although it is true that [a]n easement of necessity may occur when a parcel has become landlocked from outside access such that the owner would have no reasonable means of ingress or egress except over lands promised by another and a right-of-way is necessary for the enjoyment of the parcel . . . [t]he inverse also is true; that is, a common-law right-of-way based on necessity expires when the owner of a dominant estate acquires access to a public or private road through another means." (Citations omitted; internal quotation marks omitted.) *Christensen* v. *Reed*, 105 Conn. App. 578, 583–84, 941 A.2d 333, cert. denied, 286 Conn. 912, 944 A.2d 982 (2008). "There is no presumption that expense or inconvenience sufficiently establishes a right-of-way by necessity." *Taylor* v. *Silverstein*, Superior Court, judicial district of Tolland, Docket No. CV-04-400576 (April 10, 2006) (*Hon. Lawrence C. Klaczak*, judge trial referee), citing *Marshall* v. *Martin*, 107 Conn. 32, 37, 139 A. 348 (1927).

The plaintiff maintains that she enjoys an easement by necessity because her southern lot is landlocked with access to Amundsen Street through a right-of-way over Lee's property. In response, Lee maintains that because the plaintiff has access to Amundsen Street through her own adjacent lot, it cannot be said that she enjoys an easement by necessity over the right-of-way.

*Taylor* v. *Silverstein*, supra, Superior Court, Docket No. CV-04-400576, addressed a similar factual situation. In *Taylor*, the defendant claimed an easement by necessity. The defendant, however, could access his property through other property owned by him but claimed that "it would be costly to access [the subject property] by using contiguous properties he owns because of the nature of the terrain . . . ." The court held that "where the defendant can, as in this case, access his property

through other property owned by him, there is no necessity for an easement over the plaintiff's property."

Similarly, in the present case, the plaintiff claims that her second lot is landlocked with access to Amundsen Street through a right-of-way over Lee's property. The plaintiff, however, has the ability to access Amundsen Street through her own adjacent lot. The plaintiff has not provided any evidence showing that such access creates an unreasonable burden. Therefore, as the plaintiff has access to her southern lot by way of her northern lot and has the ability to access Amundsen Street by way of her northern lot, it cannot be said that her use of the right-of-way is reasonably necessary for the enjoyment of her southern lot.

Accordingly, the court finds that the plaintiff has failed to meet her burden in proving that use of the right-of-way is necessary for the enjoyment of her property. As such, the court finds that the plaintiff does not enjoy an easement by necessity over the right-of-way and finds in favor of Lee with respect to this claim.

## IV

### EASEMENT BY IMPLICATION

In determining the creation of an easement by implication, it is necessary to examine the intention of the parties and whether such an easement is reasonably necessary for the use and normal enjoyment of the dominant estate. *McBurney* v. *Cirillo*, 276 Conn. 782, 800, 889 A.2d 759 (2006). "The law adopted in this state regarding the creation of easements by implication is well established. Where . . . an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which at the time of severance is in use, and is reasonably necessary for the fair enjoyment of the other, then, upon a severance of such ownership . . . there arises by implication of law a grant or

reservation of the right to continue such use." (Internal quotation marks omitted.) *Utay* v. *G.C.S. Realty, LLC*, 72 Conn. App. 630, 636, 806 A.2d 573 (2002).

"There are two principal factors to be examined in determining whether an easement by implication has arisen: (1) the intention of the parties; and (2) whether the easement is reasonably necessary for the use and normal enjoyment of the dominant estate." (Internal quotation marks omitted.) *Gemmell* v. *Lee*, 59 Conn. App. 572, 576, 757 A.2d 1171, cert. denied, 254 Conn. 951, 762 A.2d 901 (2000). Our Supreme Court has "not required a showing that such an easement is necessary in order for the implication of its existence to arise. Instead, we have stated that in so far as necessity is significant it is sufficient if the easement is highly convenient and beneficial for the enjoyment of the portion granted. . . . The reason that absolute necessity is not essential is because fundamentally such a grant by implication depends on the intention of the parties as shown by the instrument and the situation with reference to the instrument, and it is not strictly the necessity for a right of way that creates it." (Internal quotation marks omitted.) *McBurney* v. *Cirillo*, supra, 276 Conn. 799–800.

In discussing the first prong, the court in *Utay* v. *G.C.S. Realty, LLC*, supra, 72 Conn. App. 637, stated: "The intent of the grantor to create an easement may be inferred from an examination of the deed, maps and recorded instruments introduced as evidence. . . . A court will recognize the expressed intention of the parties to a deed or other conveyance and construe it to effectuate the intent of the parties." (Citation omitted; internal quotation marks omitted.)

"The second prong that must be examined . . . is if the easement is reasonably necessary for the use and normal enjoyment of the dominant estate. . . . An

easement by implication does not arise by mere convenience or economy, but exists because of some significant or unreasonable burden as to access that demands the easement's presence. But the test is not or at least has not been all that clear. In *D'Amato* v. *Weiss*, 141 Conn. 713, 717, [109 A.2d 586] (1954), the court said, in so far as necessity is significant it is sufficient if the easement is highly convenient and beneficial for the enjoyment . . . . These cases say absolute necessity is not essential. . . .

"Perhaps the best way to evaluate the necessity factor is to look at the situation in practical terms. In 25 Am. Jur. 2d, Easements and Licenses, at § 29, page 527, it says: Necessity cannot be established where an alternative is already in existence. On the other hand, the requirement of necessity may be met where use of an alternative would involve disproportionate expense and inconvenience. . . . The necessity should be judged by whether an alternative would involve disproportionate expense and inconvenience or whether a substitute can be furnished by reasonable labor or expense." (Citations omitted; internal quotation marks omitted.) *Kolb* v. *Mazzucco*, Superior Court, judicial district of New Haven, Docket No. CV-04-400517 (August 23, 2005) (*Corradino, J.*) (39 Conn. L. Rptr. 845, 850–51).

As previously stated, the plaintiff can access Amundsen Street with relative ease through her own adjacent lot. The plaintiff has not presented any evidence showing that such access involves a disproportionate expense or unreasonable burden that would thereby create a reasonable necessity to use Lee's property. Thus, the court finds that the plaintiff has failed to establish by a preponderance of the evidence that a right-of-way over Lee's property is reasonably necessary for the use and normal enjoyment of her southern lot. Accordingly, the court finds in favor of Lee with respect to this claim.

## V

## PRESCRIPTIVE EASEMENT

A prescriptive easement is established by proof of the use of the land of another, which is open, visible, continuous and uninterrupted for a period of fifteen years and made under a claim of right. Section 47-37 provides: "No person may acquire a right-of-way or any other easement from, in, upon or over the land of another, by the adverse use or enjoyment thereof, unless the use has been continued uninterrupted for fifteen years."

"To acquire a right of way by prescription, there must be a user which is open, visible, continuous and uninterrupted for fifteen years and made under a claim of right. . . . The prescriptive right extends only to the portion of the servient estate actually used . . . and is circumscribed by the manner of its use. . . . A prescriptive right cannot be acquired unless the use defines its bounds with reasonable certainty." (Citations omitted; internal quotation marks omitted.) *Shepard Group, LLC* v. *Arnold*, Superior Court, judicial district of New Haven, Docket No. CV-07-5012312 (November 12, 2008) (*Hon. Howard F. Zoarski*, judge trial referee). Further, "[a] prescriptive right extends only to the portion of the servient estate actually used and is circumscribed by the manner of its use." *Block* v. *Bruneau*, Superior Court, judicial district of Waterbury, Docket No. CV-064012001 (March 20, 2008) (*Roche, J.*) (45 Conn. L. Rptr. 195, 196), citing *Kaiko* v. *Dolinger*, 184 Conn. 509, 510–11, 440 A.2d 198 (1981).

"The claim of right requirement has been further explained as follows. Use made under a claim of right means use that is made without recognition of the rights of the owner of the servient tenement." (Internal quotation marks omitted.) *Crandall* v. *Gould*, 244 Conn. 583, 590, 711 A.2d 682 (1998). "To establish an easement by

prescription it is absolutely essential that the use be adverse. It must be such as to give a right of action in favor of the party against whom it has been exercised." *Whiting* v. *Gaylord*, 66 Conn. 337, 344, 34 A. 85 (1895). The use must occur without license or permission and must be "unaccompanied by any recognition of [the right of the owner of the servient tenement] to stop such use." (Internal quotation marks omitted.) *Westchester* v. *Greenwich*, 227 Conn. 495, 501, 629 A.2d 1084 (1993).

"In order to be adverse, the use must be such as to give a right of action in favor of the party against whom it has been exercised. To establish a claim of right, it is not necessary that a claim be actually made and brought to the attention of the owner in fee. . . . However, there can be no claim of right unless the use is unaccompanied by any recognition of the right of the owner of the servient tenement to stop such use. A use by express or implied permission or license cannot ripen into an easement by prescription. . . . In this jurisdiction, property rights cannot be extinguished or impaired by prescription, unless the party claiming to have acquired an easement, has satisfied each stringent condition. . . . Because title to real property is not at issue in a claim asserting the existence of a prescriptive easement, all that is required is a showing of proof by a fair preponderance of the evidence." (Citations omitted.) *Sciortino* v. *Kruk*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV-07-5004110 (January 20, 2009) (*Radcliffe, J.*).

"[W]hen an easement is established by prescription, the common and ordinary use which establishes the right also limits and qualifies it. . . . The use of an easement must be reasonable and as little burdensome to the servient estate as the nature of the easement and the purpose will permit." (Citations omitted; internal quotation marks omitted.) *Kuras* v. *Kope*, 205 Conn. 332, 341, 533 A.2d 1202 (1987).

The defendants argue that the plaintiff has failed to meet her burden of proving that her use was continuous and uninterrupted for a fifteen year period. Further, the defendants maintain that the plaintiff failed to meet her burden of proving the bounds of the easement claimed with reasonable certainty.

Connecticut "seems to follow the general common law on this topic, and several jurisdictions have held that to be continuous, the use need not be daily, weekly or even monthly; one court said that [i]n determining continuity, the nature of the easement and the land it serves as well as the character of the activity must be considered. . . . The acquirement of an easement to use a passageway does not require a continuous use every hour of the day but only that type of use which is normally exercised." (Citation omitted; internal quotation marks omitted.) *Wypchoski* v. *Berg*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV-97-0059212 (February 19, 1998) (*Corradino, J.*); see also *Roche* v. *Fairfield*, 186 Conn. 490, 501 n.11, 442 A.2d 911 (1982) (stating that seasonal use sufficient to satisfy continuous use requirement).

In the present case, the court finds that the plaintiff's testimony was credible as to the following facts: the plaintiff used the disputed right-of-way at various times since 1969 for access by foot to Amundsen Street, training her dogs, walking, exercising and storage. Additionally, the court finds that the plaintiff cleared the brush and growth from the area, mowed the natural growth, cultivated the growth of natural shrubs and cultivated the growth of certain shrubs. Further, the court finds that the plaintiff used the area to store garden equipment and dog training equipment. The court finds that the plaintiff's use of the area, although not on a daily basis, was routine and varied by season. Although Lee presented evidence showing that, at times, the disputed area was overgrown, the court finds that the plaintiff's

use was open, visible and otherwise apparent to Lee and her predecessor in title. Additionally, the court finds that that use was uninterrupted, without license or permission, and without recognition of any rights in Lee to prevent this use, for a period of at least fifteen years.

Therefore, the court finds that the plaintiff has proved, by a preponderance of the evidence, that her use was open, visible, continuous and uninterrupted regarding the aforementioned uses. The evidence, however, does not support a finding that the plaintiff's use of the area for vehicular access to Amundsen Street was open, visible, continuous and uninterrupted.

With respect to the bounds of the easement claimed, the plaintiff presented the court with a copy of the plaintiff's deed describing the subject area and multiple photographs of that area. The plaintiff's deed, dated January 21, 1969, and recorded in the volume 710 at page 193 of the land records, describes the subject area as follows: "[A] strip of land of uniform width of forty (40) feet, situated directly east of said lot, being a portion of said Lot No. 17, bounded: NORTH by said Amundsen Street; EAST by remainder of said Lot No. 17 . . . SOUTH by the remainder of said Lot No. 17; and WEST by lot hereby conveyed. The Southerly line of said Right of Way being located by projecting the southerly of the lot hereby conveyed in an easterly direction for a distance of forty (40) feet." Based on the aforementioned description, the court finds that the plaintiff has described the bounds of the disputed area with reasonable certainty.

Accordingly, the court finds that the plaintiff has proved, by a fair preponderance of the evidence, that she has used the right-of-way openly, visibly, continuously and without interruption for fifteen years under a claim of right. Thus, the plaintiff enjoys a prescriptive

easement over the aforementioned right-of-way for access by foot to Amundsen Street, dog training, walking, exercising and storing both garden equipment and dog training equipment. Additionally, the plaintiff's use of the right-of-way included clearing the brush and growth from the area, mowing the natural growth, cultivated the growth of natural shrubs and cultivating the growth of certain shrubs. The plaintiff, however, does not enjoy a prescriptive easement over the right-of-way for automobile access to Amundsen Street.

Furthermore, with respect to count two, alleging that Lee interfered with the plaintiff's exercise and enjoyment of her easement, the court enjoins Lee from any current and future interference with the plaintiff's exercise and enjoyment of her easement for the aforementioned uses.

## VI

### "SPITE FENCE"

In counts four and five, the plaintiff alleges that Lee erected a stockade style fence along her boundary with the plaintiff's property and that the fence prevents the plaintiff's use of her property and the right-of-way. Specifically, the plaintiff claims that the fence impairs the value of her property because it prevents access to her right-of-way and access to her property from Amundsen Street. Further, the plaintiff claims that Lee maliciously erected the fence to annoy and interfere with the plaintiff's use and enjoyment of her property and the right-of-way.

"The Connecticut progenitor of what have commonly been called the 'spite fence' cases appears to be *Whitlock* v. *Uhle*, 75 Conn. 423, 53 A. 891 (1903)." *Palladino* v. *Pellini*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-04-0199821 (February 2, 2005) (*Wilson, J.*). In *Whitlock* v. *Uhle*, supra, 426, our

Supreme Court construed and applied the predecessors to General Statutes §§ 52-480[4] and 52-570[5] and set forth the elements necessary to state a cause of action under §§ 52-480 and 52-570. The court held that the essential elements are: "(1) a structure erected on the owner's [defendant's] land; (2) a malicious erection of the structure; (3) the intention to injure the enjoyment of the adjacent landowner's land by the erection of the structure; (4) an impairment of the value of adjacent land because of the structure; (5) the structure is useless to the defendant; and (6) the enjoyment of the adjacent landowners' land is in fact impaired." *Palladino* v. *Pellini*, supra, Superior Court, Docket No. CV-04-0199821.

"Whether a structure was maliciously erected is to be determined by its character, location and use [rather] than by an inquiry into the actual motive in the mind of the party erecting it." *DeCecco* v. *Beach*, 174 Conn. 29, 32, 381 A.2d 543 (1977). In determining whether a structure was maliciously erected, the Supreme Court in *Whitlock* v. *Uhle*, supra, 75 Conn. 423, stated: "We think it follows from this purpose of the Act, and from the conditions which define and limit this exception or new right and duty incident to the ownership of land, that the intent to injure by the erection of the structure is an intention which must be discovered mainly from the fact that the structure does impair the value of adjacent land and injure the owner in its use, from the absence of the reasonable possibility of any real advantage, whether of profit, protection, or pleasure,

---

[1] General Statutes § 52-480 provides: "An injunction may be granted against the malicious erection, by or with the consent of an owner, lessee or person entitled to the possession of land, of any structure upon it, intended to annoy and injure any owner or lessee of adjacent land in respect to his use or disposition of the same."

[5] General Statutes § 52-570 provides: "An action may be maintained by the proprietor of any land against the owner or lessee of land adjacent, who maliciously erects any structure thereon, with intent to annoy or injure the plaintiff in his use or disposition of his land."

in the use of the land, and from the character, location and surroundings of the structure itself. It is quite possible for a structure to bear on its face, as it were, convincing evidence that it was intended for a legitimate purpose, or that it was intended to injure the adjacent land and its owner. Such intention relates to the thing done, its purpose and effect, and does not depend on the existence of personal spite or ill-will. The intention is not the motive from which it may have sprung, but the established purpose, from whatever motive, to use the land in a manner not justified by its ownership, and forbidden by law. When a structure, useless to the owner, injuring adjacent land and its owner, intended to work such injury, is wilfully erected, it is maliciously erected; that is, it is erected in knowing disregard of the law and the rights of others." Id., 427.

In the present case, the court finds that Lee erected a fence, with a uniform height of six feet, around the border of her property. The court finds that Lee testified credibly that the fence was erected, in part, to safeguard her children and to separate her dogs from those of the plaintiff. The court finds those reasons to be legitimate and, in the absence of evidence to the contrary, it cannot be said that Lee maliciously erected the fence. Thus, the plaintiff has failed to prove by a preponderance of the evidence that Lee maliciously erected the fence in question. Accordingly, judgment is rendered in favor of Lee on counts four and five of the plaintiff's amended complaint.

## VII

## CONCLUSION

With respect to count one, the court finds that the plaintiff failed to prove by a preponderance of the evidence that she enjoys an easement by deed, implication or necessity over the right-of-way. The court, however, does find that the plaintiff proved by a preponderance

of the evidence that she enjoys a prescriptive easement, limited to the aforementioned uses, over the right-of-way.

With respect to count two, the court finds in favor of the plaintiff and enjoins Lee from any current and future interference with the plaintiff's exercise and enjoyment of her easement for the aforementioned uses.

With respect to count three, alleging that Lee trespassed on the plaintiff's easement, the court finds in favor of Lee, as the plaintiff does not have an ownership interest in the right-of-way.

With respect to counts four and five, alleging a violation of §§ 52-480 and 52-470, respectively, the court finds that the plaintiff failed to prove by a preponderance of the evidence that Lee maliciously erected the fence in dispute.

With respect to count six, alleging that Lee negligently damaged the water pipe that provides water service to the plaintiff's property, the court finds that the plaintiff failed to prove by a preponderance of the evidence that Lee, or a person under her authority, caused that damage.

With respect to counts seven and eight, alleging that Lee, in erecting the disputed fence, negligently destroyed and intentionally destroyed the plaintiff's surveyor's stakes, the court finds that the plaintiff failed to prove by a preponderance of the evidence that Lee or an agent of Lee destroyed the plaintiff's surveyor's stakes.